GARMAN TURNER GORDON LLP
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail:  ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
E-mail: tgray@gtg.legal
MARK M. WEISENMILLER, ESQ.
Nevada Bar No. 12128
E-mail: mweisenmiller@gtg.legal
650 White Drive, Suite 100
Las Vegas, Nevada 89119
Telephone (725) 777-3000
Facsimile (725) 777-3112
*[Proposed] Attorneys for Debtors*

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>TURNBERRY/MGM GRAND TOWERS, LLC,<br>☒ Affects this Debtor. | Case No.: 15-13706-abl<br>Chapter 11<br><br>**JOINTLY ADMINISTERED UNDER CASE NO.: 15-13706-abl** |
| In re :<br>TURNBERRY/MGM GRAND TOWER B, LLC,<br>☒ Affects this Debtor. | Case No.: 15-13708-abl<br>Chapter 11 |
| In re :<br>TURNBERRY/MGM GRAND TOWER C, LLC<br>☒ Affects this Debtor. | Case No.: 15-13709-abl<br>Chapter 11<br><br>Date:  August 31, 2015<br>Time:  9:30 am. |

**MOTION FOR ORDER AUTHORIZING MAINTENANCE
OF PREPETITION BANK ACCOUNTS**

Turnberry/MGM Grand Towers, LLC (the "Tower A Debtor"), a Nevada limited liability company, Turnberry/MGM Grand Tower B, LLC (the "Tower B Debtor"), a Nevada limited liability company, and Turnberry/MGM Grand Tower C, LLC (the "Tower C Debtor"), and together with the Tower A Debtor and the Tower B Debtor, the "Debtors"), a Nevada limited liability company, debtors and debtors-in-possession, by and through their proposed attorneys,

the law firm of Garman Turner Gordon LLP, hereby submit their *Motion for Order Authorizing Maintenance of Prepetition Bank Accounts* (the "Motion") in the above-referenced cases.

Debtors hereby request that this Court enter an order in substantially the form attached hereto as **Exhibit "1"** (the "Order") providing that in addition to the debtor-in-possession account established post-petition, Debtors may maintain the three prepetition bank accounts that serve as security for three letters of credit for which ACE Insurance Company ("ACE") is the beneficiary. This Motion is made and based on the following memorandum of points and authorities, the declaration of Dr. Kenneth W. Wiles filed concurrently herewith (the "Wiles Decl."), the papers and pleadings on file herein, judicial notice of which is hereby respectfully requested, and the argument of counsel entertained by the Court at the time of the hearing on the Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**
**INTRODUCTION**

1. On June 26, 2015 (the "Petition Date"), Debtors filed their respective voluntary petitions for relief under Chapter[1] 11 of the Bankruptcy Code, thereby commencing the above-captioned cases (the "Chapter 11 Cases"). See ECF No. 1.

2. On July 6, 2015, the Court approved the joint administration of the Chapter 11 Cases under Case Number 15-13706-abl. See ECF No. 29.

3. Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, Debtors continue to operate their businesses as debtors-in-possession.

4. No request has been made for the appointment of a trustee or examiner, and no official committees have been established in the Chapter 11 Cases.

. . .

. . .

---

[1] Unless otherwise stated, all references to "Sections" herein shall be to the Bankruptcy Code appearing in Title 11 of the U.S. Code; all references to a "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "Local Rule" shall refer to the Local Rules of Bankruptcy Practice of the U.S. District Court for the District of Nevada.

## II.
## JURISDICTION AND VENUE

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (M).

6. The basis for the relief sought herein are Sections 105, 363(c)(1), 1107, and 1108 of the Bankruptcy Code and Local Rule 4001(e).

7. Venue of Debtors' Chapter 11 Cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8. Pursuant to LR 9014.2, Debtors consent to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the United States Constitution.

## III.
## BACKGROUND

9. The Debtors are developers of high-rise condominium towers commonly referred to as The Signature Towers. The Signature Towers consist of three towers referred to as "Tower A," "Tower B," and "Tower C," each containing 576 units, for a total of 1,728 units. See Wiles Decl. ¶ 4.

10. The Signature Towers' condominium units were sold to individual owners who at all times could and can use their units in any manner they chose, including, but not limited to, renting out their units or residing in their units full time. See id. ¶ 5.

11. The Debtors are each Nevada limited liability companies, created to develop the three Signature Towers. Each Debtor has two members: (1) a member affiliated with the Turnberry group of entities ("Turnberry"), and (2) a member affiliated with MGM Resorts International ("MGM"). Each member has a 50% economic interest in the particular Debtor. Specifically, Turnberry/Harmon Ave. LLC and MGM Grand Condominiums, LLC are the members of the Tower A Debtor; Turnberry/Harmon Ave. B LLC and MGM Grand

Condominiums II, LLC are the members of the Tower B Debtor; and Turnberry/Harmon Ave. C LLC and MGM Grand Condominiums III, LLC are the members of the Tower C Debtor. Each Debtor was formerly managed by the Turnberry-affiliated member. See id. ¶ 6.

12. Prior to and since the Petition Date, Andare Corp ("Andare"),[2] which is solely owned by Dr. Kenneth W. Wiles,[3] is, and has been, the independent manager for each of the Debtors. Andare has broad managerial powers and independent control over Debtors. In fact, neither of Debtors' members has authority to replace Andare as Debtors' manager except upon (i) the death, incapacity, or resignation of Dr. Kenneth W. Wiles from Andare; (ii) Andare's resignation as Debtors' manager; or (iii) for cause based on the gross negligence, willful misconduct, or breach of any obligation of Andare under its Engagement Letter as determined by a final, non-appealable order of a court of competent jurisdiction. See id. ¶ 7.

13. At the time of the initial sale of units within The Signature Towers (approximately 2004-2006), the Las Vegas real estate market was extremely active, with significant increases in real estate prices being realized on an annual (and in many cases, monthly or quarterly) basis. See id. ¶ 8.

14. Shortly after the completion of the third Signature Tower, the "Great Recession" struck, pummeling Las Vegas' economy and devastating its real estate market. The Debtors were among its many victims. See id. ¶ 9.

15. After prices of Las Vegas real estate dramatically declined, with condominium units being particularly hard hit, and hotel occupancy rates plummeting in what has been of the worst economic declines in the past century, a number of individuals and entities who had purchased units in The Signature Towers filed suit seeking to rescind their real estate contracts, alleging the condominium units were sold to them as "securities." Since then, litigation has been pursued in Nevada's Eighth Judicial District Court, the Nevada Federal District Court, the Nevada Supreme Court, this Court, the Ninth Circuit Court of Appeals, and the United States

---

[2] Andare is a corporate financial advisory, valuation, restructuring, expert witness and consulting firm. The firm engages with senior management team and Board of Directors to drive operational improvements and apply new working methods to underperforming or distressed companies.

[3] Dr. Wiles' extensive experience and independence is discussed in detail in his declaration filed at ECF No. 23.

Supreme Court.  See id. ¶ 10.

## IV.
## RELIEF REQUESTED

16.　In 2004 and 2005, Debtors caused Bank of America, N.A. ("Bank of America") to issue the following letters of credit for which ACE, providing general liability and other insurance coverage, is the beneficiary: (i) on September 27, 2004, the Tower A Debtor caused Bank of America to issue letter of credit number 3065725 in the amount of $1,262,400, which letter of credit had a balance of $869,220 on the Petition Date; (ii) on December 1, 2005, the Tower B Debtor caused Bank of America to issue letter of credit number 3078832 in the amount of $568,080, which letter of credit had a balance of $568,080 on the Petition Date; and (iii) on November 21, 2005, the Debtor Tower C caused Bank of America to issue letter of credit number 3065725 in the amount of $1,161,700, which letter of credit had a balance of $62,700 on the Petition Date (collectively, the "LOCs").  See id. ¶ 11.

17.　On the Petition Date, Debtors collectively had four bank accounts with Bank of America.  Three of these accounts are restricted certificate of deposit accounts that secure the LOCs, being the accounts ending in 3855, 7300, and 0390, each of which had account balances on the Petition Date that are consistent with the balances of the LOCs (collectively, the "LOC Accounts").  See id. ¶ 12.

18.　Debtors propose to maintain the LOC Accounts post-petition as they are restricted, secure the LOCs, and it would be impractical and unnecessarily administratively burdensome on Debtors to open alternate accounts that would be to the satisfaction of ACE and Bank of America.  See id. ¶ 13.

19.　The fourth pre-petition account held at Bank of America is an operating account ending in 7101 (the "Pre-petition Operating Account"), which was the account from which Debtors issued checks and paid expenses pre-petition.  After the Petition Date, the Pre-Petition Operating Account was closed and Debtors opened a debtor-in-possession account at Wells Fargo Bank, N.A. (the "DIP Account").  The DIP Account will be the account that Debtors use for receiving all income and financing and paying all expenses.  See id. ¶ 14.

Garman Turner
Gordon LLP
650 White Drive, Ste. 100
Las Vegas, NV 89119
(725) 777-3000

20. Through this Motion, Debtors request that this Court grant the following relief and authorize the following procedures:

    a. that Bank of America is authorized and directed to continue to administer, service, and maintain the LOC Accounts as such accounts were administered, serviced, and maintained prior to the Petition Date, without interruption and in the usual and ordinary course;

    b. that nothing contained in this Motion or its subsequent Order may prevent Debtors from closing the LOC Accounts as they deem necessary and appropriate;

    c. that Bank of America implements reasonable handling procedures to effectuate the terms requested in this Motion. Debtors request that Bank of America not be liable to Debtors or their Estates, or otherwise held in violation of this Motion or its subsequent Order, for honoring a prepetition debit or other debit: 1) at the direction of Debtors that such prepetition debit or other debit be honored; 2) in the good faith belief that the Court has authorized that such prepetition debit or other debit be honored; or 3) as a result of an innocent mistake made despite implementation of such handling procedures;

    d. that the relief, rights, and responsibilities requested herein are deemed to apply only to the LOC Accounts;

    e. that to the extent any other order is entered directing Bank of America to honor debits made, drawn, or issued in payment of pre-petition claims, the obligation to honor such items are subject to the order authorizing this Motion; and

    f. that Debtors and Bank of America are authorized and directed to continue to perform pursuant to the terms of any prepetition documents and agreements governing the LOC Accounts, except and to the extent otherwise directed by the terms of the Order. Debtors request that Bank of America is authorized to continue offsetting any funds deposited in the LOC Accounts by Debtors to the extent necessary to cover any fees, charges, and assessments, set forth or provided for in the agreements governing the LOC Accounts or as otherwise permitted in

Garman Turner Gordon LLP
650 White Drive, Ste. 100
Las Vegas, NV 89119
(725) 777-3000

the ordinary course of business pursuant to the agreements governing the LOC Accounts.

## V.
## LEGAL ARGUMENT

Courts commonly approve a debtor's continued use of its prepetition cash management system, along with those related procedures and transactions used in the ordinary course of a debtor's business. For example, in In re The Charter Co., 778 F.2d 617 (11th Cir. 1985), the bankruptcy court entered an order authorizing the debtor and forty-three subsidiaries "to continue to consolidate the management of its cash as has been usual and customary in the past, and to transfer monies from affiliated entity to entity, including operating entities that are not Debtor herein." Id. at 618. The United States Court of Appeals for the Eleventh Circuit further ruled that authorizing a debtor to utilize its prepetition "routine cash management system" was "entirely consistent" with the provisions of the Bankruptcy Code, and in particular Section 363(c)(1), which allows a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." Id. at 621; see also In re UNR Indus. Inc., 46 B.R. 25, 27 (Bankr. N.D. Ill. 1984) (debtor utilized "a court-approved and common cash management system known as 'Zero Balance Account.'"); In re Baldwin-United Corp., 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987) (court noted that fierce hostility between the creditors therein even made difficult "seemingly simple matters such as [the debtor's] motion to continue existing bank accounts and cash management system . . .").

Indeed, the purpose of Section 363(c)(1) is to provide a debtor in possession with the flexibility to engage in those ordinary course transactions necessary to operate its businesses without unnecessary oversight by their creditors or the court. See In re Lavigne, 114 F.3d 379, 384 (2d Cir. 1997); In re Enron Corp., 2003 WL 1562202, at *15 (Bankr. S.D.N.Y. 2003).

As numerous courts have indicated, the Bankruptcy Code grants discretionary authority to a bankruptcy court to allow the continued use of bank accounts. See, e.g., In re The Charter Co., 778 F.2d at 618 (noting that the bankruptcy court authorized the debtor to maintain its existing bank accounts); In re Lorber Indus. of Cal., 373 B.R. 663, 665 (B.A.P. 9th Cir. 2007)

Garman Turner Gordon LLP
650 White Drive, Ste. 100
Las Vegas, NV 89119
(725) 777-3000

(discussing that the bankruptcy court allowed the debtor to continue using its prepetition workers' compensation program bank account for the purposes of administering benefits); In re Grant Broad., Inc., 75 B.R. 819, 820 (E.D. Pa. 1987) (noting an order by the bankruptcy court authorizing use of cash collateral and prepetition bank accounts); In re Charter Behavioral Health Systems, LLC, 292 B.R. 36, 41 (Bankr. D. Del. 2003) (allowing the debtor to continue to use its existing bank accounts without the necessity of closing all prepetition accounts and open new post-petition accounts); In re Hechinger Inv. Co. of Del., Inc., 282 B.R. 149, 150 (Bankr. D. Del. 2002) (entering an order on the petition date authorizing the debtor to continue using its existing prepetition bank accounts); In re UAL Corp., 2002 WL 34344255, 1 (Bankr. N.D. Ill. 2002) (authorizing debtors, within the reasonable exercise of their business judgment, to continue using all of their bank accounts in existence on the petition date); In re New York City Shoes, Inc., 78 B.R. 426, 427 (Bankr. E.D. Pa. 1987) (approving of the debtor's continued routine deposits of post-petition funds into prepetition bank accounts).

Pursuant to U.S. Trustee Guideline 4.4.6,[4] a Chapter 11 debtor in possession must close its prepetition bank accounts and open new accounts. This requirement is designed to: (i) provide a clear line of demarcation between prepetition and post-petition transactions and operations; and (ii) block the inadvertent payment of prepetition claims through the payment of checks drawn prior to the commencement of a debtor's case. Courts often deviate from the strict recommendations of Guideline 4.4.6, however, based upon the unique circumstances of each case, if doing so facilitates a debtor's successful reorganization. See, e.g., In re The Colad Group, Inc., 324 B.R. at 217; In re Charter Behavioral Health Sys., LLC, 292 B.R. at 41.

Debtors have complied with Guideline 4.4.6 with regard to the Pre-Petition Operating Account by closing such account and establishing the DIP Account in its place. However, to require Debtors to close the LOC Accounts and to open new restricted bank accounts to secure

---

[4] U.S. Trustee Guideline 4.4.6 provides, in general, that a "debtor shall close all financial accounts that existed before the Chapter 11 case and establish new debtor-in-possession accounts to be used for all transactions during the pendency of the case."

the LOCs is illogical, impractical, and imposes and undue and unnecessary administrative burden on Debtors for no practical benefit.  See Wiles Decl. ¶ 13.

Debtors request that the LOC Accounts be deemed and designated as debtor-in-possession accounts, and that their maintenance and continued use, in the same manner and with the same account numbers, styles, and document forms as during the pre-petition period be authorized.  By closing the Pre-Petition Operating Account and creating the DIP Operating Account, Debtors will have achieved the goals of the bank-account-closing requirement: (i) establishing a clear demarcation between prepetition and post-petition checks, and (ii) blocking the inadvertent payment of prepetition checks.

## VI.
## CONCLUSION

WHEREFORE, Debtors respectfully request that this Court issue an Order substantially in the form attached hereto as **Exhibit "1"** authorizing the maintenance of Debtors' LOC Accounts as described in detail herein.  Debtors also request such other and further relief as is just and proper.

DATED this 30th day of July, 2015.

GARMAN TURNER GORDON LLP

By:  /s/ *Talitha Gray Kozlowski*
GREGORY E. GARMAN, ESQ.
TALITHA GRAY KOZLOWSKI, ESQ.
MARK M. WEISENMILLER, ESQ.
650 White Drive, Suite 100
Las Vegas, Nevada 89119
*[Proposed] Attorneys for Debtors*