FENNEMORE CRAIG, P.C.
Thomas H. Fell (No. . 003717)
Anthony W. Austin (No. 025351)
300 S. Fourth Street, Ste. 1400
Las Vegas, NV 89101
Telephone: 702-791-8225
E-Mail: tfell@fclaw.com
          aaustin@fclaw.com

*Attorneys for Creditor KJH & RDA Investor Group, LLC*

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>TURNBERRY/MGM GRAND TOWERS, LLC,<br>☒ Affects this Debtor. | Case No. 15-13706-abl<br>Chapter 11 |
| In re:<br><br>TURNBERRY/MGM GRAND TOWER B., LLC,<br>☒ Affects this Debtor. | **JOINTLY ADMINISTERED UNDER CASE NO.: 15-13706-abl**<br><br>Case No. 15-13708-abl<br>Chapter 11 |
| In re:<br><br>TURNBERRY/MGM GRAND TOWER C, LLC,<br>☒ Affects this Debtor. | Case No. 15-13709-abl<br>Chapter 11<br><br>Date:  August 31, 2015<br>Time: 9:30 a.m. |

**OPPOSITION TO DEBTORS' MOTION FOR ENTRY OF ADMINISTRATIVE PROCEDURES ORDER: (1) ESTABLISHING BAR DATE FOR FILING PROOFS OF CLAIM; (2) APPROVING THE FORM AND MANNER FOR FILING PROOFS OF CLAIM; AND (3) LIMITING NOTICE OF DOCUMENTS FILED AFTER THE GENERAL BAR DATE TO THOSE PARTIES ASSERTING CLAIMS OR REQUESTING NOTICE**

Creditors KJH & RDA Investor Group, LLC, and those individuals and entities listed on Exhibit A hereto ("Plaintiff Claimants"), by and through their counsel, Thomas H. Fell, Esq. of the law firm of Fennemore Craig, hereby submit their Opposition to Debtors' Motion For an Order: (1) Establishing Bar Date for Filing Proofs of Claim; (2) Approving the Form and Manner for Filing Proofs of Claim; and (3) Limiting Notice of Documents Filed After the General Bar Date to Those Parties Asserting Claims or

Requesting Notice.

### Introduction

Debtors' Motion is an attempt to take an administrative process and twist it to produce a tactical gain as part of a continuing plan to delay litigation, forum shop and limit claims.  Through the Motion in order to limit claims, Debtors would, without any justification, reduce the time to file a proof of claim by forty-five (45) days.  Further, the Debtors would turn the officially accepted proof of claim form into a disguised unilateral discovery vehicle by forcing disclosure of documents while simultaneously allowing the Debtors to avoid any disclosures of their own.  Finally, the Motion seeks to improperly limit who can sign on behalf of a claimant.  All of this is done under the guise of benefiting the creditors of the estate but as discussed below, the only parties that benefit are the Debtors and their insiders.  Importantly, the Bankruptcy Petition was filed on June 26, 2015, but to date, after almost two (2) months, no Creditor Committee has been formed. Certainly the Creditor's Committee should also be given a chance to weigh in on the Claim Form before final approval.

### Factual background

The claims comprising the litigation that the Debtors are currently subject to arose more than 8 years ago. The litigants in these ongoing actions are the only persons who have filed claims in court within the statute of limitations. These litigants consist of approximately 539 persons who were original purchasers of approximately 500 units.  The other creditors have not filed any claims on their own behalf and their statutes of limitations has long since run to file their own claims.

This bankruptcy filing is nothing more than a strategic litigation filing being made to find a fourth forum that will again hear the defendants[1] motions to dismiss for a fourth time. The first three motions to dismiss filed by all the defendants have already been

---

[1]  The Defendants in the various actions discussed herein are Debtor Turnberry/MGM Grand Towers, LLC; and non-Debtor parties MGM Grand Condominiums, LLC, The Signature Condominiums, LLC, MGM Mirage, MGM Resorts International, Turnberry/Harmony Ave, LLC, MGM Grand Hotel, LLC, Signature Tower I, LLC, Signature Tower 2, LLC, Signature Tower 3, LLC, and Turnberry West Realty, Inc.

FENNEMORE CRAIG
PROFESSIONAL CORPORATION

10733238.4

1    denied (i) by Judge Denton in Nevada State Court hearing the claims against the

2    Defendants other than the Debtors where a jury trial is being sought, (ii) by Arbitrator

3    Hare hearing the federal claims against all defendants, and (iii) by Arbitrator Sofaer

4    hearing the claims against only the Debtors.  Discovery has now been ordered in all three

5    forums, which defendants have been trying to avoid at all costs.

6        The Debtors are and always have been nothing more than empty shells formed as

7    pass through entities for the funds that built the Signature at MGM Grand and the profits

8    derived therefrom.  The Debtors never had any assets, employees or offices of its own.

9    The assets were supplied by MGM Resorts International and Turnberry Associates.  The

10   offices and employees were supplied by MGM Grand Hotel LLC and Turnberry West

11   Realty, Inc. After the $420 million in net profits were removed by MGM Resorts

12   International and Turnberry Associates from the Debtors in 2006 and 2007, the Debtors

13   have been out of business and nothing more than  empty shells for the last 8 years.

14        **A.    Debtors' Bait and Switch Scheme to Defraud**

15       The bait and switch scheme to defraud was to advertise the hotel condominium

16   suites for preconstruction sale to investors as intended "luxury" rental accommodations

17   for upscale clientele with represented rental rates to be equal to the rates of suites at the

18   Bellagio and Four Seasons of $300 to $500 a night, while at the same time secretly

19   planning to rent the units as "economy" rental units as "accommodations" for patrons of

20   the "Wet Republic" day pool that was secretly being planned to be built on the common

21   areas of the Signature property.  There was no way for the Plaintiff Claimants to know of

22   these secret plans until after their purchases closed and the units were immediately

23   advertised by MGM as the units' rental agent at rental rates of $99 a night.

24       Shortly after all the closing had occurred and the "Wet Republic" opened within

25   the common areas of the Signature at MGM Grand, the switch was completed.  The

26   clientele of the "Wet Republic" is a 21 to 30 something hard drinking, raucous  crowd

27   seeking a "spring break" atmosphere consisting of lots of booze and DJ music so loud that

28   the decibel levels exceed the Clark County noise ordinance by eight fold and caused units

FENNEMORE CRAIG
PROFESSIONAL CORPORATION

10733238.4

1    floors to vibrate and windows to rattle. This drunken crowd has grown so troublesome

2    that the Las Vegas police department has had to installed a police substation at the

3    entrance/exit of the "Wet Republic" for which there have been thousands of incident

4    reports filed.

5          As a result of this bait and switch scheme to defraud, orchestrated and scripted by

6    MGM Resorts and implemented by MGM Grand Hotel, the value of the Plaintiff

7    Claimants' property plunged by 75% virtually overnight and has never recovered.  These

8    facts will therefore prove that the Plaintiff Claimants' losses have everything to do with

9    the MGM Resort and MGM Grand Hotel's specific scheme to defraud them in the sale and

10   rental target of these Signature at MGM Grand units and nothing to do with the general

11   market trends. Notably, while other property values in Las Vegas have recovered some of

12   their value, the value of the Signature units remains at these same low levels due to these

13   low "economy" rental rate and muscle t-shirt and tattooed clientele.

14         These were the perfect units for MGM Grand to use to as "accommodations" for

15   MGM Grand's "economy" clientele because MGM Grand was not the owner of these units

16   and had no carrying costs of these units.  Rather, the Plaintiff Claimants are the victims of

17   this scheme to defraud who had to shoulder the burden of these costs and reduced room

18   rates.  As a result many of them lost their units through short sales or foreclosures.  At the

19   same time, MGM Resorts and MGM Grand Hotel have made hundreds of millions of

20   dollars through the fraudulent sales scheme and the operations of the "Wet Republic",

21   which unlike other day pools has "luxury" condominium suites at their front door

22   available at "economy" rates.

23         **B.    The pending lawsuits**

24         The signatory to the purchase and sale agreements, Turnberry/MGM Grand

25   Towers, LLC (the "Tower "A" Debtor"), is a defendant and/or respondent in each of the

26   five actions as follows: (1) KJH & RDA Investor Group, LLC et al v. Turnberry/MGM

27   Grand Towers, LLC [Nevada State District Court (Case No. A547024; consolidated with

28   A655873; A569825; A573280; A574558; A581851)]; (2) Mary Ann Sussex et al v.

FENNEMORE CRAIG
PROFESSIONAL CORPORATION

10733238.4

1   Turnberry/MGM Grand Towers, LLC et al [United States District Court, District of
2   Nevada (Case No. 2:08-cv-00773-MMD-PAL)]; (3) George Abraham et al. v.
3   Turnberry/MGM Grand Towers, LLC et al [United States District Court, District of
4   Nevada (Case No. 2:11-cv-01007-JCM-RJJ); consolidated with Mary Ann Sussex et al. v.
5   Turnberry/MGM Grand Towers, LLC]; (4) Richard Agnello et al. v. Turnberry/MGM
6   Grand Towers, LLC et al (AAA Case No. 11-20-0900-1963); (5) Mary Ann Sussex et al.
7   v. Turnberry/MGM Grand Towers, LLC et al. (AAA Case No. 11-20-1200-0264).   Only
8   the Tower A Debtor has ever been named a defendant in the actions; neither of the other
9   two debtors is a defendant as neither was a signatory to the purchase and sale agreements
10  with Plaintiff Claimants.

11       The first action filed was KJH & RDA Investor Group, LLC et al v.
12  Turnberry/MGM Grand Towers, LLC [Nevada State District Court (Case No. A547024;
13  consolidated with A655873; A569825; A573280; A574558; A581851]].   The complaint
14  was filed on August 27, 2007.   Debtor Turnberry/MGM Grand Towers, LLC filed a
15  motion to compel arbitration on October 29, 2007.   An order staying the action and
16  compelling arbitration was issued on February 13, 2008.   The state court claimants in
17  arbitration were originally part of a consolidated arbitration (ie. Sussex, discussed below)
18  but were separated from that action after the defendants filed a motion in state court to
19  remove the Sussex AAA Arbitrator, Brendan M. Hare, prior to any award, for evident
20  partiality.   After returning to state court, the non-signatory defendants filed five motions
21  to dismiss, each covering certain causes of action in Plaintiff Claimants' operative Second
22  Amended Consolidated Complaint. To date each motion has been briefed and decided.
23  After multiple attempts by Plaintiff Claimants to commence discovery, a N.R.C.P. Rule
24  16 Conference to discuss the commencement of discovery was held on June 15, 2015.

25       Thereafter, on June 23, 2015, an interim order was issued by Judge Mark A.
26  Denton asking the parties to nominate up to three individuals to serve as Special Master
27  for discovery-related issues. After the parties submitted their nominations for a discovery

28

FENNEMORE CRAIG
PROFESSIONAL CORPORATION     10733238.4

1    Special Master, the Debtor, Turnberry/MGM Grand Towers, LLC, filed for bankruptcy on
2    June 26, 2015.

3    Significantly, on July 15, 2015, the non-Debtor defendants filed a document with
4    the court entitled, "Defendants' Statement of Effect of Bankruptcy" which states,
5    "According to Defendant Turnberry/MGM Grand Towers, LLC (the 'Debtor'), claims
6    against the non-debtors in this matter are property of the bankruptcy estate and all claims
7    against it or the Defendants are subject to the automatic stay." Judge Denton has since
8    ruled on the issue that the bankruptcy will not affect the action against the non-Debtor
9    defendants. As described below, this is merely the most recent attempt by the Tower A
10   Debtor and the non-signatory non-debtor defendants to block discovery just before
11   discovery is set to commence. Debtors have sought to remove this matter to this Court.

12   The second action filed was Mary Ann Sussex et al v. Turnberry/MGM Grand
13   Towers, LLC et al [United States District Court, District of Nevada (Case No. 2:08-cv-
14   00773-MMD-PAL)]. This lawsuit was first filed on February 22, 2008 as a class action in
15   Nevada state court but was removed to federal court on June 13, 2008. Defendants,
16   including the Tower A Debtor, filed a motion to compel arbitration on July 17, 2008.
17   After initially denying defendants' motion to compel arbitration, the court granted
18   defendants' motion on June 16, 2009 (after the Nevada Supreme Court ruled that the
19   arbitration clause was not unconscionable). The action was sent to the AAA and Brendan
20   M. Hare was selected as the arbitrator on February 26, 2010.

21   Since defendant entities that were not signatories to the purchase and sale
22   agreement were included, and thus arguably not subject to the arbitration provision,
23   defendants filed a motion to determine whether the claims against the non-signatories
24   were arbitrable. On March 2, 2010, Judge Hunt denied defendants' motion, stayed the
25   arbitration for 90 days, and ordered discovery to determine whether the remaining non-
26   signatory defendants should defend in arbitration under contract and agency principles. In
27   response and to avoid discovery, the non-signatory defendants withdrew their motion on
28   March 10, 2010.

FENNEMORE CRAIG
PROFESSIONAL CORPORATION

10733238.4

- 6 -

On February 3, 2011, Judge Hunt reinstated his March 2, 2010 order for discovery to determine whether the non-signatory defendants should defend their claims in arbitration. Shortly thereafter on February 11, 2011, again to avoid discovery, the non-signatory defendants filed a notice of their acceptance of arbitration and the arbitrator's authority to decide the claims made by or against them. The discovery order was vacated, the arbitration stay was lifted and the parties proceeded to commence arbitration with Arbitrator Brendan M. Hare.

The third action is the federal arbitration with Arbitrator Brendan M. Hare, Mary Ann Sussex et al. v. Turnberry/MGM Grand Towers, LLC et al. (AAA Case No. 11-20-1200-0264). After the non-signatories filed their notices of acceptance of the arbitrator's authority to decide the claims made by or against them, Arbitrator Hare issued several orders. Significantly, just prior to the commencement of discovery, and right after Arbitrator Hare consolidated all claimants from all state and federal actions and denied defendants' motion to dismiss, defendants all of a sudden vehemently objected to Arbitrator Hare's continued service due to unfounded claims of evident partiality, and filed motions in state and federal court to remove Arbitrator Hare for evident partiality prior to any award.

In the state court KJH action, Judge Denton denied the objection to Arbitrator Hare's appointment but stayed the action to allow defendants to appeal and/or file a writ with the Nevada Supreme Court on this issue. Defendants filed an appeal and a writ. Rather than stalling the Sussex AAA arbitration by waiting on the Nevada Supreme Court to rule on the issue of pre-award removal of an arbitrator, which could easily take over two years, Plaintiff Claimants severed the state and federal claimants. The effect was to select a new arbitrator for the state court arbitration (Richard Agnello et al. v. Turnberry/MGM Grand Towers, LLC et al (AAA Case No. 11-20-0900-1963) and continue with Arbitrator Hare in the Sussex arbitration.

However, federal court Judge Miranda Du granted defendants' motion to remove Arbitrator Hare for evident partiality on December 31, 2013. This decision by Judge Du

PROFESSIONAL CORPORATION
10733238.4
- 7 -

1    stalled the arbitration completely and all forthcoming discovery.  Judge Du's decision was

2    later reversed almost two years later by the Ninth Circuit Court of Appeals as "clearly

3    erroneous".  See *In re Sussex*, 781 F.3d 1065 (9th Cir. 2015).  After successfully stalling

4    this arbitration and discovery efforts for almost two years, Arbitrator Hare scheduled an

5    administrative conference call on June 26, 2015. Earlier that day, Debtor Turnberry/MGM

6    Grand Towers, LLC filed for bankruptcy.

7         On July 14, 2015, Plaintiff Claimants received notice from the AAA and Arbitrator

8    Hare that the arbitration, including the claims against respondents other than

9    Turnberry/MGM Grand Towers, LLC, was stayed pending an order from the bankruptcy

10   court. Again, just before discovery was to commence, the defendants successfully stalled

11   discovery in an effort to forum shop.

12        The fourth action is George Abraham et al. v. Turnberry/MGM Grand Towers,

13   LLC et al [United States District Court, District of Nevada (Case No. 2:11-cv-01007-

14   JCM-RJJ)]. Defendants in this action filed a motion to compel arbitration on November 1,

15   2011 which was granted by the Court on September 24, 2012.  The Abraham action was

16   consolidated with Mary Ann Sussex et al. v. Turnberry/MGM Grand Towers, LLC on

17   November 12, 2013. All plaintiffs in the Abraham action were included in the Sussex

18   Fourth Amended Complaint in Arbitration filed on July 1, 2013.   Arbitrator Hare's

19   Consolidation Order No. 9 consolidated the claims of all the Abraham plaintiffs into the

20   Sussex arbitration. Therefore, the efforts to remove Arbitrator Hare after Consolidation

21   Order No. 9 successfully stalled discovery efforts brought by the claimants that were

22   originally plaintiffs in the Abraham action.

23        The fifth action is the state arbitration with Arbitrator Abraham D. Sofaer, Richard

24   Agnello, et al. v. Turnberry/MGM Grand Towers, LLC et al (AAA Case No. 11-20-0900-

25   1963). The single respondent in this arbitration is the Tower A Debtor and signatory,

26   Turnberry/MGM Grand Towers, LLC (all other non-signatory defendants are defending in

27   state court, KJH & RDA Investor Group, LLC et al v. Turnberry/MGM Grand Towers,

28   LLC et al.).  As described above, all plaintiffs in all actions were consolidated in the

1    Sussex arbitration. Because, however, defendants attempted to disqualify Arbitrator Hare
2    in state court (KJH & RDA Investor Group, LLC et al. v. Turnberry/MGM Grand Towers,
3    LLC, et al.) which resulted in a stay of the entire consolidated Sussex arbitration and an
4    appeal and writ to the Nevada Supreme Court which could have lasted years, Plaintiff
5    Claimants were able to have the appeal and writ dismissed by severing the state and
6    federal court claimants. This resulted in the selection of a new arbitrator for the state
7    arbitration. Abraham D. Sofaer was selected as arbitrator of the Agnello arbitration on
8    March 7, 2014.

9        It is in the Agnello arbitration action that Plaintiff Claimants came the closest to
10    receiving meaningful discovery – almost eight years after the first action was filed in
11    Nevada state court. After serving requests for production of documents and receiving
12    subsequent objections by defendants, Plaintiff Claimants filed a motion to compel
13    discovery. Arbitrator Sofaer in Order No. 6 dated March 21, 2015 (which also denied
14    Debtor's motion to dismiss on a majority of claims) compelled documents to be produced
15    (eg. "Respondent is therefore ordered to produce all documents in its possession or control
16    related to the formulation and implementation of its advertising and marketing plans and
17    policies for condominiums in the Signature project…).

18        Responsive documents were stored on electronic hard drives and thus required a
19    thorough search aided by standard electronic discovery protocols in order to search
20    hundreds of thousands of documents.  Counsel for both parties met and conferred
21    throughout this process by telephone once a week for several weeks. The last call the
22    parties' counsel had on this issue was on Thursday, June 25, 2015. J.P. Hendricks, counsel
23    for Debtor Turnberry/MGM Grand Towers, LLC, stated that by July 2, 2015, Debtor
24    would produce approximately 150,000 responsive documents. This was to be the first
25    production as there were another 100,000 documents that had yet to be reviewed but many
26    of which were likely responsive to the discovery requests.  The next day, however,
27    Turnberry/MGM Grand Towers, LLC filed for Chapter 11 bankruptcy, resulting in a stay
28    of the arbitration and halting the production of more than 150,000 responsive documents.

**C.    Debtors are mere shell entities with no business operations to reorganize or liquidate.**

The Debtors are, and always have been, nothing more than empty shells formed as pass through entities for the funds that built The Signature at MGM Grand and the profits derived therefrom.   Debtors have never had employees, nor have they conducted any business of any kind for at least the last eight years (if ever).   All profits from the sale of the Units (approximately $420 million according to public filings) were removed by MGM Resorts International and Turnberry Associates from the Debtors in 2006 and 2007. As evidenced by the Debtors' schedules and statements of affairs, the Debtors have no assets other than bank accounts pledged to back insurance policies (and a judgment for embezzlement), have no income from business operations, and have no creditors other than the Plaintiff Claimants.   Debtors have nothing to reorganize or liquidate in these chapter 11 proceedings.

## Legal Argument

**A.    The Debtors have failed to establish that Local Rule 3003 should not govern the filing of proofs of claim.**

Local Rule 3003 states that "[u]nless the court orders otherwise, a proof of claim in a chapter 11 case must be filed within ninety (90) days after the date first set for the meeting of creditors under 11 U.S.C. § 341(a)."   On July 7, 2015 at [DE 44] the Debtors caused to be filed and mailed to creditors the Amended Notice of Chapter 11 Bankruptcy Cases, Meeting of Creditors, and Deadlines.   The Amended Notice stated that the Section 341 meeting of creditors was to be held on August 21, 2015.   Accordingly, the Amended Notice gave notice that Local Rule 3003 requires proofs of claims to be filed on or before November 19, 2015.   Debtors' claims and notice agent, Prime Clerk, currently lists the November 19, 2015 deadline to file proofs of claim.

Now, nearly a month after causing the Amended Notice to be filed and served,  the Debtors now seek to expedite the claims process by shortening the deadline to October 5, 2015 – reducing the timeframe in Local Rule 3003 in half.   Completely missing from the

1   Motion is any justification for the expedited process. In the same breath, Debtors discuss

2   the complex nature of potentially having 3,800 creditors, but then fail to establish how

3   this creates a need to reduce the time frame to address those claims. Logic would dictate

4   that the alleged complexity and size of the claims would necessitate a longer time frame to

5   file proofs of claim.

6       It is this duplicitous reasoning that highlights the true intentions of the reduced

7   proof of claim time frame. The reduced time frame is not reasonably calculated to

8   provide due and proper notice to parties in interest. Quite to the contrary, the shortened

9   frame is a transparent attempt to allow the Debtors to improperly deny claims on

10  technicalities created by the Debtors.

11      **B.    The altered proof of claim form improperly seeks disguised discovery**

12  **and unnecessary or irrelevant information.**

13      The Debtors seek to alter the B10 (Official Form 10) in three objectionable

14  manners. First, the Debtors seek to create an entirely new section, Section 6, that forces

15  claimants to disclose information that is irrelevant or otherwise known to the Debtors.

16  Section 6 of the altered Form requires an original purchaser to disclose a myriad of

17  information that is unrelated to any basis to assert a claim. For example, the altered Form

18  requests such inconsequential information as i) whether the purchaser closed in person or

19  mail; ii) whether a broker assisted in the sale; and iii) if the purchaser ever stayed in the

20  unit.

21      Further, the Debtors, as the sellers of the units, have all of this information. The

22  identity of the seller, the assignment of a sale agreement, and the identity of the parties to

23  the sale agreements are all within the scope of information within the records of the

24  Debtors. The Debtors as the sellers know who the purchasers are and what units they

25  purchased. They know whether the purchaser closed or assigned their interest to an entity

26  before closing.    Additionally, the Debtors know who used a broker and which

27  representative from Turnberry West Realty was involved in the sale. This information is

28  in each buyer's Purchase and Sale Agreement. Therefore Section 6 should be stricken

FENNEMORE CRAIG
PROFESSIONAL CORPORATION

10733238.4

1  from the form.

2       Second, the altered Form in Section 8 also vastly expands the Official Form's

3  document disclosure requirements to require all documents supporting the creditor's claim

4  be attached.  Such a change places an oppressive burden on the claimants as the altered

5  requirements force the disclosure of boxes of eight (8) years' information that support the

6  complaints.    This altered disclosure requirement operates to force litigation style

7  discovery and disclosure without subjecting the Debtors to the same process.    As

8  discussed in detail above, the Debtors have spent the last eight (8) years carefully

9  avoiding any discovery.  The altered Form is just the latest litigation tactic to shield the

10  Debtors from litigation.  For this reason, Section 8 should be struck from the form.

11       The Debtors in Section 9 seek to limit who may sign the altered Form as set forth

12  in instructions to Section 9. The Motion states that only the individual claimant or where

13  the claimant is an entity, the claimant's authorized agent, may sign the altered Form. This

14  is a substantial change from the official Form that allows a claimant's authorized agent,

15  including their attorneys, to sign regardless of whether the claimant is an individual or

16  entity.  There is no justification given for this curtailment in the power to execute the

17  altered Form.  However, given the compressed timeframe's requested and the onerous

18  document demands, it is apparent that the limitations are aimed to add further hurdles to

19  claimants asserting their claims against the Debtors.  Therefore this provision of Section 9

20  should be struck.

21       The Motion seeks to portray these changes as innocuous alterations to the Official

22  Form.  However, the Motion is utterly devoid of any justification for the accelerated time

23  frame or the changes to the Form.  The changes are aimed at create substantial burdens

24  and hurdles to filing a proof of claim; the end goal of which is to preclude valid claims on

25  technicalities, and to deny the Creditors Committee an opportunity to object to this form.

26                        **Conclusion**

27       The Motion is a thinly veiled attempt to create burdens and hurdles to the filing of

28  a proof of claim in the hope that the onerous requirements and accelerated deadline

1  preclude parties from asserting their valid claims.  The Motion couches these changes in

2  terms of a benefit to the creditors but as examined above, the Motion only serves the

3  Debtors' interests.  There is no legitimate justification for the changes or accelerated time

4  frame.  Accordingly, the Motion must be denied.

5        DATED this 17th day of August, 2015.

6                                          FENNEMORE CRAIG, P.C.

7

8                                          By: _____

9                                          Thomas H. Fell
                                           Anthony W. Austin
                                           *Attorneys for Plaintiffs.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENNEMORE CRAIG
PROFESSIONAL CORPORATION

10733238.4

# EXHIBIT A

# EXHIBIT A

37TH FLOOR INVESTOR GROUP, LLC
38TH FLOOR INVESTOR GROUP, LLC
KJH & RDA INVESTOR GROUP, LLC
ABRAHAM, GEORGE
ADEKUNBI, MOJISOLA & SANNI, ABIOLA
AGGARWAL, S.K.
AHN, DANIEL D. & SARA Y.
AJ REAL ESTATE V, INC. (John Perez)
ALEXANDER, LEON & SYLVIA
ALICAWAY, EDGARDO & JANETTE
ALIKSANIAN, LORI/BERJ
ALONZO, JORGE & DARLENE
ANDERSON, MICHAEL & MATTHEW
ANSAY, CHARITO
AQUIJE, OSCAR
ARAGONES, WILLIAM
AREVALO, LUIS ROBERTO
ARONOVA, LIDIA & ELEONORA
ARPAD, DIANA & SHELDON
AZAR, BETTY K.
BB VENTURES, LLC
BAIN, PIERRE & MARIETTA
BAJER, JOSEPHINE
BAKHTIARI, SIAVASH
BAKIJAN, RAFIK
BAKTARI, JONATHAN & ROBERT COHAN
BALGINY, NIKI
BANG, YOUNG
BARENS, MAXINE
BARLAJ, IBRAHIM & LAURA
BARRERA, LEONARDO & GLORIA
BARRETT, NANCY
BARRIO, JORGE R. & MARIA C.
BATINO, RONALD & BESSIE
BELL, STEPHEN T. & TONI
BERKELEY, ROSS
BOBROW, MITCHELL
BOGHOUZIAN, KENARIK
BOHN, MATTHEW
BONHAM, GREGORY & ELIZABETH
BRADLEY COSTELLO 1997 TRUST, Bradley Costello as Trustee
BROWN, JERRY

BUCHSTABER, MARK & DEBORAH
BUHRMAN, GARY & JOAN
BURGUM, JIM C.
CARNESALE, LOUIS & JOHN
CASTORO, CARL
CASTRO, MYRNA
CATARSI, EDWARD P.
CAVALLARO, ERNEST R. & PAULA K.
CEJA, GILBERTO
CHADWICK, BRUCE
CHANG, JEWEL
CHARKCHYAN, RUZAN & ARUTYUN
CHO, LARRY & STEFANIE
CHO, MYUNG JA
CHOI, BRICE
CHUPP, ANDREW
CIFELLI, THOMAS & JOHN (CIF CORP.)
CIMARRON INVESTMENT CO., LLC (MARVIN LIPSCHULTZ)
CLARKE, THOMAS
COBETTO, MARK & MICHAEL URBAN
COHEN, DOUGLAS
COLLINS, JOHN
CONEJERO, TERENCIA
CONNOLLY, DENNIS & CATHRYN
CORBRIDGE, LINDA S.
CRUM, TERRY L.
CUTAJAR, ANTHONY
DAPOLITO, ANN
DEFILIPPO, MATTHEW & ELIZABETH VULTAGGIO
DELEON, JESSE & LIBERATION
DEVINENI, VENKAT
DG CAPITAL, LLC (MADAY, GREG S.)
DIXON, LINDA ANN
D'LUCO, LINDA
DOLLINS, RUBY ANN
DONNELLY, JOHN & SANDRA
DORADO, PACIFICO D.
DUBUC, ROBERT E. & MADELINE J.
DUMOULIN, LAWRENCE
DUNCAN & GARDELLA ENTERPRISES, LLC
ELCHICO, EDGAR
ENEIX, BRENT
ENRIQUEZ, EVELYN

ERSKINE, RONALD & DEBRA
ESCOBEDO, XOCHITL
ESPINAS, CARMEN & OSCAR
FAULCONER, DIANE B.
FCF, LLC (RICHARD FONTANA, T.CHRISTENSEN, SHON FAINARU, VIVIAN KELNAR-FAINARU)
FEBBRARO, PASQUALE & CATHLEEN M.
FEGHALI, FOUAD
FELDMAN, RICHARD
FINMARK, JON
FISCHER, BARBARA
FITCH, JEFFERY & CHERYL
FLETCHER, STEVEN & LISA
FRANCISCO, JUAN
FRANDEN ENTERPRISES, LTD
REAL ESTATE 5, LLC
FRAZIER, CLAY & PAULA
FREEMAN, RAY
GABAY, HAIM
GARCIA, RUBEN
GERVASI, FRANK & JANICE/VINCE
GHOSHTAGORE, UJJAL
GIULIANO, JEROME &DIANE
GLICKMAN, CYNTHIA
GOLI, VIJAY
GONSECKI, ALEXANDER & VALENTINA
GONZALEZ, MARCO
GRIDLEY, LYNETTE
GRIFFIN, GRIS
GRZYB, JASON
GUERRERO, ROBERTO & IRENE
GUSEINOV, GARY
GUTIERREZ, NOMER
GUYON, STEPHEN J. & KATHLEEN
HADDAD, WADIEH
HAHALYAK, MICHAEL & LISA KRISAY-HAHALYAK
HAIG, JEFFREY
HAKOPYAN, OGANES JOHN
HALEGUA, INO
HARO, CORONADO
HAVERLAND, STEVE & JANET
HEMAR, RICHARD
HIRJI, NARMIN; PANCHAL, DASHRATH & DINA D.
HOBSON, LAWRENCE & LINDA

HODGES,RICHARD D.& NANCY J.,TRUSTEES OF THE HODGES FAMILY TRUST
HOKANSON, JAMES
HOM, MILLY
HOM, EVA
HORTON, BARBARA
HOVANNESSIAN, ARMEN
HOWARD, SHARON & JERRY MINTON & CLIFF KOSCHNICK
HSU, LISA
HSU, EUGENE
HUANG, LO
HUIBREGTSE, DOUGLAS
HUO, HEIKYUNG
ISERI, DONALD & MARY
JAHNS, DOROTHY
JIMENEZ, LORENZO
JOSIAH, MICHAEL
KABIGTING, HAYDEE
KALLIVROUSIS, TERESA
KANDOV, MICHAEL
KARATAS, MARKAR & CELIK, NURHAN
KARR, JAMES & KATHRYN
KECHEJIAN, MARK N. & CHRISTINE
KHALAF, JAMAL & MAYSOON
KIM, BYUNG
KIM, CHRISTINA
KIM, LANCE*
KIM, MIRIAM & MARIE
KIM, ROY
KINGFISH ENTERPRISES, LLC
KOENEKE, RICHARD W. & JULIA A.
KOLINSKI, MICHAEL
KOLLOORI, BENJAMIN
KOURY, JAMES
KRIEGER, LES & REBEKAH
KUPSH, JOYCE
LALEZARY, ARASH & MISSASGHI, ABTIN
LANAM, MARGARET
LARSON, LARRY
LE, LUNIQUE
LEE FAMILY TRUST, CHRIS LEE and SUZIE LEE as Co-Trustees
LEE, EUN YOUNG
LEE, HOJOON
LES SAINTES, LLC (SANTOS, EDWARD & MARIA)

LESLEY, MARK & SHIRLEY
LEUNG, DENNIS & SHIN, JIYEN
LINARES, MICHAEL & LAURIE
LINDER, STUART
LIU, TINA PENNY
LONCAR, ANTE & LJUBICA & VIDUCICH, ELIZABETH G.
LOPRESTI, PETER & ALBERT
LOUIE, BELINDA W.
LOY, MABEL & MYRNA
LUCY RAYMOND, LTD.
LV 700, LLC
MAES, DANNY & CLEVELAND, STEPHANIE
MAGARIAN, AREN & ALIN
MAGHAMI FERIAL TRUST, Ferial Maghami, Trustee
MAHINDOKHT, DADGAR
MAHOUBI, AZIZ & FARAH
MAI, KIM & SONCHAU
MANIVONG, OLIVIA
MAR, EUGENE
MARCHESE, SAM & MARIA
MARTIN, DAVID
MARTINA, NANCY
MCBIRNEY, SAM
MCBIRNEY, SCOTT
MCELLIGOTT JR., ROBERT
MEDEIROS JR., LEONEL
MENDOZA, JOHN
MESHKI, CYRUS
MEYERSON, RICHARD
MGM GROUP 18, LLC
MIDDLETON, EDGAR & JOANNE
MIGNOT, MARK & SUSAN
MILAN, WILLIAM
MIMMS, ERIC
MOMDZHYAN, MARY/GEORGE/LUIZA & MARINE HARUTYUNYAN
MONA, MICHAEL J. JR., Trustee, MONA FAMILY TRUST
MORAN, LUIS
MORCOS, MARIO
MORCOS, MAURICE
MOUTON, CHRISTOPHER ANDRE & JEAN CLAUDE
MUNRO, BRODIE
NAFISI, MATTHEW
NARVAEZ, ED

NEWMAN, ROY
NIA, CHARLENE
NILAND, MICHAEL& YOSHII, EUGENE
NIX, GREGORY SCOTT
NOWAK, JEFFREY (Third Property LLC)
OHTA, REMI
O'LEARY, KIERAN & DONNA
ORELLANA, MARIA
OVADIA, STEPHANIE G.
OZBAG, PUZANT
PANG, FRANKLIN
PARK, TERRY C.
PATEL, PIYUSH & LORRAINE
PATEL, SURESH
PAVESE, ANTHONY & NARDA
PECK PROPERTIES (Charles Jesse Peck & Marilyn Peck)
PEDERSON, WILLIAM & TATYANA
PERKINS, RONALD D.
PETRAKIS, BASSILIOS C.
PGR ENTERPRISES, LLC (RICK TSCHETTER/GLORIA TSCHETTER/PETER SIVU)
PHILLIPS, DANE R.
POLAK, JOHN
POMORSKI, ROBERT
POULS, MICHAEL & SHERYL
PRANGER, MARTIN (Stealth Enterprises, LLC)
PRIN, WILLIAM & MICHELLE
PRICE, RANDELL G. & DEBRA K.
PRIMAS, CRAIG A.
PRITZL, LEE (AARON WEBER, FRED SCHWARTZ; LEE PRITZL COOLER,INC.)
QUAN, NORMAN
QUEZADAS-HORTA FAMILY TRUST, Roberto Quezadas-Horta, Trustee
RAHIM, AMIN & ZAITUN A.
RAMOS, VALENTE C.
RAPPAPORT, JAMES & MARILYN
RAY, JERRY & LINDA
RAZOOK, RICHARD
REEVES, SHIRLENE
RICK, JAMES & LAURINDA
RIOS, RAUL & FERMINA
RISHWAIN, DARRON R.
RIVERA, MICHAEL
ROAN, ANTHONY
ROMANELLO, JOSEPH & VALERIE

ROTTIER, RICHARD & SHARON
RTISHCHEV, IGOR
RUDNITSKY, BENJAMIN & TAMAR A.
RUIZ, MARIA
RUSSO, ROSALIND
RYU, SUNHAE
SALEM, PRISCILLA
SAMPAL FAMILY REVOCABLE LIVING TRUST (SAMPAL, ELVIS & CRISTY)
SANEDRIN, BERNADETTE
SATTERLEE, KENNETH (St. Croix Capital Pension Plan)
SAVAGE, WARREN & DONNELLY, ELLEN
SCHOEN, DOUGLAS
SCHWARTZ, ERIC
SCHWARTZ, PHYLLIS R.
SCRAM, LLC
SEIDFATHI, SASAN & SAGHAFI, MEHRNAZ
SHAMS, MANSOUR & ZAHRA
SHAW II, BOBBY
SHIM, DAVID
SHIN, CARL & JASON KIM
SHIN, HYO & JUNG
SIGNATURE MGM GRAND, LLC (CORRINE HEMSLEY)
SIM, PETER
SIMANGAN, MANUEL G.
SIN, DAVID
SINN, ROBERT
SLADE, JAMES & JANICE
SMITH, JOSEPH H. & CAROL J.
SOLIP, LLC; KIM, KUN, HONG JIN SHUN, JUNG CHUL TAK
STABILE, MATTHEW
STROUD, ROBERT E.
SWEIDAN, JACOB & GABRIELA
TABACHKI, NEIL & NANCY
TANG, HUNG & LINH
TANG, JIAN JENNY
TAR, IMTIAZ & SHEHZAAD
TEBANGIN, DOBY & VERA
TOLEDO, FRANCISCO & HIDELISA
TOLEY, ROBERT B.
TOROMANOVA, DIMITRITZA
TRABILCY, DEREK & KARRIE
TRAVALINI, MARIO
TSCHUDIN, HUGO & RUTH

TUCULET, WILLIAM

TUNA, SEHAK & VARTUHI

URBANO, EMMANUEL & MARCELA

VAHIDI, JAVAD & ANA

VAIL, JAMES; RASMUSSEN, ALBERT & MARY

VASKOV, MILAN & LYNDA

WAKEFIELD, RANDALL & THERESA

WALKER, SCOTT & AMANDA

WALLACH, STEVE & MICHELLE

WALTERS-SHULTZ, PEGGY, RICK WALTERS, TINA WALTERS

WEIBORT, ROBERT

WEINBERG, MARC

WENGER, ALEX

WERDMULLER VON ELGG, WALTER & JILL; WERDMULLER FAMILY TRUST

WILSON, MICHAEL, STANLEY &CAMILLA

WOLF TRADING COMPANY, LLC (THOMAS J. WOLF, JR.)

WU, RICHARD & IVY

YANG, JACK (SHING YUAN YANG)

YI, GREG & GRACE

YOSSIFOFF, YORAM

YOUNG, KRISTIE

ZHENG, SHI SI