GARMAN TURNER GORDON LLP
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail:  ggarmn@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
E-mail:  tgray@gtg.legal
MARK M. WEISENMILLER, ESQ.
Nevada Bar No. 12128
E-mail:  mweisenmiller@gtg.legal
650 White Drive, Suite 100
Las Vegas, Nevada 89119
Telephone (725) 777-3000
Facsimile (725) 777-3112
*Attorneys for Debtors*

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>TURNBERRY/MGM GRAND TOWERS, LLC,<br>☒ Affects this Debtor. | Case No.: 15-13706-abl<br>Chapter 11<br><br>**JOINTLY ADMINISTERED UNDER CASE NO.: 15-13706-abl** |
| In re :<br>TURNBERRY/MGM GRAND TOWER B, LLC,<br>☒ Affects this Debtor. | Case No.: 15-13708-abl<br>Chapter 11 |
| In re :<br>TURNBERRY/MGM GRAND TOWER C, LLC,<br>☒ Affects this Debtor. | Case No.: 15-13709-abl<br>Chapter 11<br><br>Date:  August 31, 2015<br>Time:  9:30 a.m. |

**REPLY TO THE UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' APPLICATION FOR ORDER APPROVING: (I) THE EMPLOYMENT OF ANDARE CORP AS MANAGER OF THE DEBTORS PURSUANT TO 11 U.S.C. § 363 *NUNC PRO TUNC* TO THE PETITION DATE; AND (II) DR. KENNETH W. WILES AS THE DEBTORS' <u>DESIGNATED RESPONSIBLE PERSON</u>**

Turnberry/MGM Grand Towers, LLC, a Nevada limited liability company, Turnberry/MGM Grand Tower B, LLC, a Nevada limited liability company, and Turnberry/MGM Grand Tower C, LLC, a Nevada limited liability company (collectively, the

"Debtors"), debtors-in-possession, hereby respectfully submit their reply (the "Reply") to *The United States Trustee's Objection to Debtors' Application for Order Approving: (I) the Employment of Andare Corp. as Manager of the Debtors Pursuant to 11 U.S.C. § 363 Nunc Pro Tunc to the Petition Date; and (II) Dr. Kenneth W. Wiles as the Debtors' Designated Responsible Person (ECF Nos. 22, 23, 30)* [ECF No. 117] (the "Objection"), filed by Tracy Hope Davis, United States Trustee for Region 17 (the "UST").

This Reply is made and based upon the memorandum of points and authorities provided herein, as well as the papers and pleadings on file in the above-captioned cases, judicial notice of which is respectfully requested, and any argument of counsel entertained by the Court at the time of the hearing of the Application.[1]

# I.
# INTRODUCTION

The Objection should be overruled and the Application should be granted. Simply stated, there is no support for the UST's argument that a heightened standard applies to the Application. While the UST argues that the Debtors applied an incorrect legal standard, the legal authority cited by the UST does not support its argument as it is both procedurally and factually distinguishable. The heightened standard recognized in *Pepper* and *Marquam* (both defined below) was applied in the context of claim objection proceedings, not an application seeking approval of the retention of a debtor's independent manager. Thus, the heightened standard recognized in *Pepper* and *Marquam* in the distinct context of claims proceedings should not be adopted as the legal standard applicable to the unique facts and circumstances of the Application.

Furthermore, the proposed employment of Andare as Debtors' manager under Section 363(b) is appropriate. The Ninth Circuit, other circuit courts, and several courts in this District have approved the retention of restructuring officers, advisor, managers, and professionals under Section 363(b) and have applied the "business judgment" rule. As detailed in the Application,

---

[1] All capitalized, undefined terms used herein shall have the meanings ascribed to them in the *Application for Order Approving: (I) the Employment of Andare Corp. as Manager of the Debtors Pursuant to 11 U.S.C. § 363 Nunc Pro Tunc to the Petition Date; and (II) Dr. Kenneth W. Wiles as the Debtors' Designated Responsible Person* [ECF No. 22] (the "Application").

Andare is both well-qualified to represent the Debtors and does not hold an interest adverse to the Debtors, their creditors, or other parties in interest – something that is undisputed by the UST. Therefore, the Application should be approved because the employment of Andare as Debtors' manager is an appropriate exercise of Debtors' business judgment.

Nevertheless, should the Court agree with the UST that a heightened standard applies (which it should not), the Application should be approved. As detailed below, the Application withstands rigorous scrutiny and is inherently fair to the Debtors, their creditors, and other parties in interest. The terms of the Application and Engagement Agreements are also consistent with terms of other debtors' managers whose employment has been approved in this District. Therefore, the Court should overrule the Objection and approve the Application.

## II.
## LEGAL ARGUMENT

### A.      The "Business Judgment" Rule is the Appropriate Standard.

The UST argues in the Objection that the Application should be denied *without prejudice* because Andare and Wiles are statutory "insiders" of the Debtors and, as such, the Court must only grant the Application after subjecting it to "rigorous scrutiny" and finding that the Application is inherently fair from the viewpoint of the Debtors and those interested therein. See Opposition at 2:10-26. In support of the UST's argument, the UST cites to Pepper v. Litton, 308 U.S. 295, 306 (1939) and Brewer v. Erwin & Erwin, P.C. (In re Marquam Inv. Corp.), 942 F.2d 1462, 1465 (9th Cir. 1991). See id. However, while *Pepper* and *Marquam* hold that a heightened standard is applicable in determining the ***validity of a proof of claim filed against the estate by an insider***, those cases do not support the UST's argument that a heightened standard should be applied in determining whether a debtor's employment of a manager should be approved, particularly where that manager is indisputably independent and was engaged shortly before the commencement of the bankruptcy cases.

*Pepper* and *Marquam* are both distinguishable on their facts and should not be adopted by this Court in this context. In *Pepper*, Pepper sued the Dixie Splint Coal Company ("Dixie") for royalties due under a lease and obtained a judgment. See Pepper v. Litton, 308 U.S. 295,

297, 60 S. Ct. 238, 240, 84 L. Ed. 281 (1939).  Meanwhile, Litton, the sole shareholder of Dixie, caused Dixie to confess a judgment in Litton's favor for back salary.  See id.  Litton then caused an execution to be issued on his judgment and at the resulting sale, purchased all the corporate assets.  See id. at 297-98, 60 S. Ct. at 240-41.  Thereafter, Litton caused Dixie to file a voluntary petition in bankruptcy.  See id. at 298, 60 S. Ct. 238, 241.  The trustee brought suit to have the judgment set aside and the execution sale quashed, but was unsuccessful.  See id. at 299-301, 60 S. Ct. at 241-42.  Litton then filed a proof of claim against the debtor to recover the balance of the judgment.  See id. at 301, 60 S. Ct. at 242.  The district court disallowed Litton's claim and held that the trustee should recover the assets purchased by Litton at the execution sale.  See id. at 301-02, 60 S. Ct. at 242-43.  The court of appeals reversed on the grounds of *res judicata*.  See id. at 302, 60 S. Ct. at 243.

The question before the United States Supreme Court was whether the bankruptcy court had power to disallow, either as a secured or unsecured claim, a claim based upon a prepetition judgment obtained by the controlling stockholder of the bankrupt corporation.  See id. at 296, 60 S. Ct. 240.  The Supreme Court held that *res judicata* did not bar the district court from disallowing or subordinating the Litton judgment.  See id. at 302, 60 S. Ct. at 243.  ***The Court further held that equity demanded disallowance or subordination of Litton's claims because of the existence of a plan and fraudulent scheme to impair the rights of other creditors.***  See id. at 311, 60 S. Ct. at 247.

Explaining that bankruptcy courts are courts of equity, the Supreme Court wrote that:

> [t]he bankruptcy courts have exercised these equitable powers in passing on a wide range of problems arising out of the administration of bankrupt estates. They have been invoked to the end that ***fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done***.

See id. at 304-05, 60 S. Ct. at 244 (citations omitted) (emphasis added).  Thus, the Supreme Court held that:

> [t]hat equitable power also exists in passing on claims presented by an officer, director, or stockholder in the bankruptcy proceedings of his corporation.  The mere fact that an officer, director, or stockholder has a claim against his bankrupt

GARMAN TURNER GORDON LLP
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

4

> corporation or that he has reduced that claim to judgment does not mean that the bankruptcy court must accord it pari passu treatment with the claims of other creditors. Its disallowance or subordination may be necessitated by certain cardinal principles of equity jurisprudence.

See id. at 306, 60 S. Ct. at 245.

It was in this context – the context of a fraudulent scheme – that the Supreme Court raised the "rigorous scrutiny" language relied upon by the UST. Such context is far afield of the present context where Andare has indisputably been engaged to serve as an independent manager of the Debtors, which engagement commenced shortly before the Petition Date. There is no legal or factual basis to expand the distinct holding in *Pepper* to the context of retaining an independent manager, particularly in light of the significant legal authority holding that the business judgment test is the applicable standard.

*Marquam* similarly does not stand for the proposition that in the context of the retention of a manager, the business judgment test must be rejected for a heightened standard. In *Marquam*, Warde Erwin was the president of Marquam and owned 60% of Marquam's shares of stock. See In re Marquam Inv. Corp., 942 F.2d 1462, 1464 (9th Cir. 1991). Charles Erwin, Warde's son, was the vice president of Marquam and was designated the director of Marquam in Marquam's bankruptcy petition. See id. Warde and Charles Erwin practiced law under the firm name Erwin & Erwin. See id.

Suzan Brewer was a tenant of Marquam and a dispute arose when Marquam sought to evict Brewer in order to demolish the house in which Brewer was living. See id. Brewer sued Marquam for intentional infliction of emotional distress and violations of the Oregon Residential Landlord and Tenant Act, and a jury returned a verdict in favor of Brewer for a total of $22,880 in general damages and $75,000 in punitive damages. See id. Three days after entry of the jury award, Marquam transferred real property to Squaw Creek Contraction Company, but the conveyance was set aside as fraudulent. See id.

After Marquam's appeal of the jury award was denied, Marquam filed for bankruptcy. See id. The bankruptcy petition was prepared by Warde Erwin as president of Marquam and listed Erwin, Lamb & Erwin as creditors holding an unsecured claim for prepetition attorneys'

fees for legal services provided to Marquam. See id. No billing or any corporate documents evidencing that a debt for attorneys' fees was incurred by Marquam was attached to the petition, and no time slips were submitted. See id.

At the hearing before the bankruptcy court, the Erwin law firm did not produce an account receivable or any billing to Marquam for legal services, and no corporate records were offered to show that Marquam had agreed to pay the Erwin law firm for legal services. See id. Although the bankruptcy court recognized that there was no documentary evidence to support the Erwin law firm's claim that Marquam intended to enter into a contract to pay for legal services, the bankruptcy court found that "the evidence shows that the services performed by the professional corporation were not intended to be donated to Marquam but were intended that they would be paid by Marquam when funds were available by Marquam to make payment of those fees...." See id. Thus, the bankruptcy court allowed the Erwin law firm's claim for $120,000, while discharging Brewer's punitive damages claim because there were insufficient funds in the bankruptcy estate. See id. at 1465.

On appeal to the Ninth Circuit, Brewer argued that the bankruptcy court erred as a matter of law in concluding that Charles Erwin had no relationship or ownership interest in Marquam. See id. The Ninth Circuit agreed, finding that the debtor's prepetition attorneys were insiders of the debtor because Warde was the president of Marquam, and Charles was listed as Marquam's director and vice president. See id. As such, the Ninth Circuit opined that the bankruptcy court's failure to recognize Charles Erwin as an insider may explain its finding that the claim was a valid debt against Marquam. See id.

Recognizing that Charles Erwin was an insider whose proof of claim was challenged by Brewer, the Ninth Circuit adopted the heightened standard recognized in *Pepper* and applied it in the same context as the Supreme Court applied it, *i.e.*, a claim objection proceeding. See id. As such, the Ninth Circuit reversed the bankruptcy court, writing that:

> [t]he bankruptcy court did not expressly place the burden on the Erwin law firm to prove that it entered into an agreement in good faith with Marquam for legal services. No evidence was offered that Marquam agreed to pay for any services furnished by the Erwin law firm. The Erwin law firm did not send a bill for its

>legal services prior to the date Marquam filed a petition in bankruptcy. The law firm did not record its alleged services to Marquam in an account receivable. The corporation did not enter legal expenses owed the law firm as an account payable. No evidence was presented of any corporate minutes reflecting a decision to enter into an agreement with the Erwin law firm for legal services.

See id. at 1465-66. Consequently, the Ninth Circuit held that, "[b]ecause the bankruptcy court failed to subject the Erwin law firm's *claim* to the rigorous scrutiny and the burden of proof required of an insider, its judgment cannot stand." See id. at 1466 (emphasis added).

Thus, *Pepper* and *Marquam*, by their terms, do not support the UST's argument that a heightened standard applies to the Application, particularly considering that Andare was engaged shortly before the Petition Date and is, in all respects, independent. In fact, it appears that no Ninth Circuit panel or court within the Ninth Circuit has applied the heightened standard recognized in *Pepper* and *Marquam* (addressing claims asserted by insiders) in the context of the retention of a debtor's manager. As a result, the Court should overrule the UST's efforts to change the applicable standard from a business judgment test to a heightened standard.

**B.    Andare's Retention Pursuant to the Engagement Agreements is a Reasonable Exercise of Debtors' Business Judgment.**

Section 363 provides, in relevant part, that a debtor-in-possession "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Under applicable case law in this and other circuits, if a debtor's proposed use of its assets pursuant to Section 363(b) represents a reasonable business judgment on part of the debtor, such use should be approved. See Walter v. Sunwest Bank (In re Walter), 83 B.R. 14, 19-20 (9th Cir. B.A.P. 1988); see also In re Ernst Home Center, Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

Bankruptcy courts have analyzed the propriety of a debtor's employment of corporate restructuring officers, advisor, and professionals under Section 363(b) on numerous occasions and it is an appropriate exercise of the debtor's business judgment to employ an independent manager or advisor in this manner. See, e.g., In re Westcliff Med. Labs., Inc., Case No. 10-16743 (Bankr. C.D. Cal. June 25, 2010); In re Fatburger Rest. of Cal., Inc., Case No. 09-13965 (Bankr. C.D. Cal. Feb. 16, 2011); In re Fairfield Residential LLC, Case No. 09-14378 (Bankr. D.

Del Jan 13, 2010); In re TOUSA, Inc., Case No. 08-10928 (Bankr. S.D. Fla. Mar. 26, 2008); In re Calpine Corp., Case No. 05-60200 (Bankr. S.D.N. Y. Jan 17, 2007).

Moreover, numerous courts in this District have authorized the retention of officers utilizing Section 363(b) of the Bankruptcy Code. See, e.g., In re Martifer Aurora Solar, Case No. 14-10355-ABL (Bankr. D. Nev. 2014) [ECF Nos. 452 and 568] (involving the employment of FTI Consulting, Inc.); In re Desert Capital REIT, Inc., Case No. 11-16624-LBR (Bankr. D. Nev. Sept. 6, 2011) [ECF No. 135 and 154] (authorizing the employment of Morris Anderson & Associates, Ltd. as chief restructuring officer of debtor); In re Specialty Trust, Inc., Case No. 10-51432-GWZ (authorizing the employment of G. Grant Lyons as Chief Restructuring Officer for the debtor); In re USA Comm. Mortg. Co., Case No. 06-10725-LBR (authorizing the retention of Thomas J. Allison of Mesirow Financial Interim Management, LLC as chief restructuring officer for the debtor and other employees of Mesirow as temporary employees); In re NW Valley Holdings LLC, Case No. 15-10116-abl (Bankr. D. Nev. 2015) [ECF Nos. 12 and 29] (authorizing the retention of Asgaard Capital LLC as debtor's manager pursuant to Section 363).

Here, employing Andare as Debtors' manager is an appropriate exercise of the Debtors' business judgment. The terms and conditions of the Engagement Agreements were negotiated by Debtors and Andare at arm's length and in good faith. The employment of Andare under the terms of the Engagement Agreements would greatly benefit Debtors' estates and creditors. The involvement of Dr. Wiles, through Andare, as an independent manager, during the pendency of the Chapter 11 Cases to manage and direct the Debtors' affairs will ensure that Debtors comply with their duties as Chapter 11 debtors-in-possession and provide support that will be necessary to achieve Debtors' objectives in Chapter 11. Under the circumstances, Debtors submit that there is ample business justification to support Andare's employment.

Further, even though an officer's appointment is not subject to Section 327(a), courts nevertheless require disclosure of connections with parties in interest that may be considered conflicts of interest. See In re eToys, Inc., 331 B.R. 176, 201-02 (Bankr. D. Del. 2005) (debtor's officers should disclose extent of relationships that might affect loyalty to the debtor or give rise to a potential conflict of interest). As detailed in the Application and the Wiles Declaration,

Andare has disclosed its connections and no objection has been asserted even suggesting that Andare has conflict of interest or is not independent. Based upon the foregoing, the employment of Andare as Debtors' manager is an appropriate exercise of the Debtors' business judgment.

**C.    Even if the Court Adopts the Heightened Standard of *Pepper* and *Marquam*, the Application Should be Granted.**

Even if the Court is inclined to adopt the UST's argument for a heightened standard (which it should not), the Application should be granted because the retention of Andare as Debtors' manager is inherently fair from the viewpoint of the Debtors and those interested therein. First, other than the UST, the only party to object to the Application is the Official Committee of Unsecured Creditors, which objected to the Application on grounds that the Chapter 11 Cases should be dismissed as an improper litigation tactic and the estate has limited assets. See ECF No. 155 at 5-6. That no other party objected to the Application is particularly noteworthy as Fennemore Craig has appeared and stated that it represents over 500 creditors, has objected to the DIP Motion [ECF No. 95] and the POC Motion [ECF No. 86], but has not objected to the Application. Second, as a result of Dr. Wile's business acumen, extensive managerial experience, independence, and financial expertise, he is well suited to serve as Debtors' manager.

More particularly, Dr. Wiles brings with him a wealth of knowledge and experience in finance and business management and operations. He earned his Ph.D. in finance from the University of Texas at Austin in 1991 and shortly thereafter, in 1993, received his Chartered Financial Analyst Certification from the CFA Institute. See Wiles Decl., at Ex. 4. Dr. Wiles has held multiple positions leading businesses through all aspects of operations, including serving as the:

- Chief Financial Officer and Vice President of Business Development at SOMAR, Inc./TeleSpectrum Worldwide Inc., one of the nation's largest independent providers of outsourced teleservices including customer retention, lead generation, and customer support. Customers included NationsBank, First Union, JC Penney, American Express, Exxon, and American Bankers Insurance Group, among others.

- Managing Director at Consolidated Capital, Inc., a venture capital and financial advisory firm focused on early-stage companies.

- Vice President of Lloyd & Company, which specialized in providing middle-market and emerging growth companies with investment banking and strategic financial advisory services.

- Chief Financial Officer and Senior Vice President of Operations and Business Development at AppForge, Inc., a leader in mobile application development platforms. The Company's premier product, Crossfire, enabled Microsoft Visual Studio developers to create mobile applications one time that could run on more than 600 mobile device and operating system combinations. Crossfire was sold to Oracle Corporation (NASDAQ: ORCL) in April 2007.

- Managing Director of the Acceleron Group, LLC, a firm specializing in providing domestic and international companies with investment banking, private equity, and strategic financial advisory services. Clients included early-stage companies to multi-national financial institutions.

- Managing Partner of the Fulcrum Financial Group, a fixed income and general financial advisory firm.

- Co-Chief Executive Officer, Chief Technology Officer, and Board Member of AlertID, Inc., a neighborhood safety network with nearly 2 million members across the country and more than 350 million safety alerts sent.

See id.

In her Objection, the UST complains of a number of provisions in the Engagement Agreements, and suggests that these provisions evidence that the Application should not be approved because those provisions demonstrate that the terms of Andare's retention are not inherently fair to the Debtors' bankruptcy estates and creditors. See Objection at 5-6. First, the UST complains of Paragraph 4 of the Engagement Agreements, which provides that "Andare shall also be reimbursed for the reasonable fees and expenses of its counsel incurred in connection with the negotiation and enforcement of this Agreement." See id. According to the UST, this provision violates Baker Botts, L.L.P v. ASARCO LLC, __ U.S. __, 135 S. Ct. 2158, 2169 (2015) and should not be approved because the Application seeks awards of compensation of such fees and expenses under Section 330. See id. at 6. While Andare disagrees with the UST's *Baker Botts* argument, Andare has agreed to a revised proposed order which incorporates

language that the UST has proposed with respect to other parties who have sought to be compensated under Section 330 in these Chapter 11 Cases. See **Exhibit 1** attached hereto.

Second, the UST also complains of Paragraph 5 of the Engagement Agreements, which provides that "Andare's services will be solely for the use and benefit of the Company, and not any of its Members, creditors, or any other party." See Objection at 6. This provision is not objectionable as Andare has been engaged as Debtors' manger and Andare's services are appropriately limited for the use and benefit of the Debtors. It would be wholly improper for Andare to be engaged as Debtors' manager and then to also provide services for Debtors' members or creditors. This is not to say that Andare does not owe fiduciary duties to the Debtors' estates and creditors. Andare is fully cognizant of its fiduciary duties and will act in accordance with those duties.

Moreover, bankruptcy courts in this District have approved similar provisions. See In re NW Valley Holdings LLC, Case No. 15-10116-abl (Bankr. D. Nev. 2015) [ECF Nos. 12, 13-1, and 29] (authorizing the retention of Asgaard Capital LLC as debtor's manager, including the terms of employment, which included a provision that provided that "[t]he Company acknowledged that Asgaard's services will be solely for the use and benefit of the Company, and not any of its equity holders, creditors, or any other party."); In re Martifer Aurora Solar, Case No. 14-10355-ABL (Bankr. D. Nev. 2014) [ECF Nos. 452, 453, and 568] (approving the employment of FTI Consulting, Inc., including the terms of employment, which included a provision that provided that, "[a]s usual, our Engagement is to represent the Company and not its individual directors, officers, employees or shareholders."). Thus, the UST's objection to Paragraph 5 should be overruled.

Third, the UST complains of Paragraph 6 of the Engagement Agreements, which provides that "Nothing in this Agreement, express or implied, is intended to confer or does confer on any person or entity, other than the parties hereto, the Indemnified Persons (as defined in Schedule A) and their respective successors, heirs, and permitted assigns, any rights or remedies under or by reason of this Agreement or as a result of the services to be rendered by Andare hereunder." See Objection at 6. The UST's objection to Paragraph 6 of the Engagement

Agreements should also be overruled because Paragraph 6 does not extinguish Andare's fiduciary duties to the estate or the creditors and this exact provision of employment has been approved by this Court. See In re NW Valley Holdings LLC, Case No. 15-10116-abl (Bankr. D. Nev. 2015) [ECF Nos. 12, 13-1, and 29] (authorizing the retention of Asgaard Capital LLC as debtor's manager, including the term of employment which provided that "[n]othing in this Agreement, express of implied, is intended to confer or does not confer on any person or entity, other than the parties hereto, the Indemnified Persons (as defined in Schedule A) and their respective successors, heirs, and permitted assigns, any rights or remedies under or by reason of this Agreement or as a result of the services to be rendered by Asgaard hereunder.").

Fourth, the UST complains of Paragraph 8 of the Engagement Agreements, which provides that "THE PARTIES HEREBY AGREE FOR THEMSELVES AND, TO THE GREATEST EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF THEIR RESPECTIVE CREDITORS AND MEMBERS, TO WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM, COUNTERLCIAM, PROCEEDING OR OTHER ACTION RELATING IN ANY WAY TO OR ARISING IN ANY WAY FROM THE AGREEMENT OR ANDARE'S SERVICES UNDER THE AGREEMENT (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE)." See Objection at 6. The UST's objection to the jury trial waiver should be overruled as the jury trial waiver is a standard contract term. In fact, the terms of Garman Turner Gordon LLP's employment included a jury trial waiver and GTG's employment was approved by this Court. See ECF Nos. 39, 41-1, and 105.

Furthermore, bankruptcy courts in this District have approved similar employment provisions. See In re NW Valley Holdings LLC, Case No. 15-10116-abl (Bankr. D. Nev. 2015) [ECF Nos. 12, 13-1, and 29] (authorizing the retention of Asgaard Capital LLC as debtor's manager, which terms of employment included a jury trial waiver); In re Martifer Aurora Solar, Case No. 14-10355-ABL (Bankr. D. Nev. 2014) [ECF Nos. 452, 453, and 568] (approving the debtor's employment of FTI Consulting, Inc., which terms of employment included a jury trial waiver); In re Desert Capital REIT, Inc., Case No. 11-16624-LBR (Bankr. D. Nev. Sept. 6, 2011)

[ECF No. 135, 136-1, and 154] (authorizing the employment of Morris Anderson & Associates, Ltd. as chief restructuring officer of debtor, which terms of employment required all disputes to be settled and determined in arbitration).

As such, the Objection should be overruled and the Application should be granted because the employment of Andare is inherently fair to the Debtors and parties interest therein.

### III.
### CONCLUSION

WHEREFORE, Debtors respectfully request that the Court overrule the Objection and enter an order in substantially the form attached hereto as **Exhibit "1,"** thereby authorizing the employment of Andare on a final basis as Debtors' manager *nun pro tunc* to the Petition Date, with compensation and reimbursement of expenses to be paid as an administrative expense in such amounts as may be allowed by the Court pursuant to the provisions of Sections 330 and 331 and the designation of Dr. Kenneth W. Wiles as the Bankruptcy Rule 9001(5) "Responsible Person" for Debtors. Debtors additionally request such other and further relief as is just and proper.

DATED this 25th day of August, 2015.

        GARMAN TURNER GORDON LLP

        By: /s/ Talitha Gray Kozlowski
            GREGORY E. GARMAN, ESQ.
            TALITHA GRAY KOZLOWSKI, ESQ.
            MARK M. WEISENMILLER, ESQ.
            650 White Drive, Suite 100
            Las Vegas, Nevada 89119
            *Attorneys for Debtors*