GARMAN TURNER GORDON LLP
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
E-mail: tgray@gtg.legal
GABRIELLE A. HAMM, ESQ.
Nevada Bar No. 11588
E-mail: ghamm@gtg.legal
650 White Drive, Suite 100
Las Vegas, Nevada 89119
Telephone (725) 777-3000
Facsimile (725) 777-3112
*Attorneys for Debtors*

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>TURNBERRY/MGM GRAND TOWERS, LLC,<br>☒ Affects this Debtor. | Case No.: 15-13706-abl<br>Chapter 11<br>**JOINTLY ADMINISTERED UNDER CASE NO.: 15-13706-abl** |
| In re :<br>TURNBERRY/MGM GRAND TOWER B, LLC,<br>☒ Affects this Debtor. | Case No.: 15-13708-abl<br>Chapter 11 |
| In re :<br>TURNBERRY/MGM GRAND TOWER C, LLC,<br>☒ Affects this Debtor. | Case No.: 15-13709-abl<br>Chapter 11<br>Date: December 14, 2015<br>Time: 9:30 a.m. |

**MOTION TO APPROVE PROTOCOLS FOR LIQUIDATION
OF CLAIMS PURSUANT TO FED. R. CIV. P. 1, 16, AND 42,
BANKRUPTCY RULE 1001, AND 11 U.S.C. § 105**

Turnberry/MGM Grand Towers, LLC, a Nevada limited liability company ("Tower A Debtor"), Turnberry/MGM Grand Tower B, LLC, a Nevada limited liability company ("Tower B Debtor"), and Turnberry/MGM Grand Tower C, LLC, a Nevada limited liability company ("Tower C Debtor" and collectively with Tower A Debtor and Tower B Debtor, the "Debtors"),

debtors and debtors-in-possession, hereby submit this motion (the "Motion") for implementation of a protocol for the liquidation of claims against the Debtors.

Debtors anticipate filing more than 500 objections (the "Objections") to the proofs of claim (each, a "Claim" and collectively, the "Claims").[1] While not class claims, the vast majority of the Claims arise out of the marketing and sale of condominium units in The Signature Towers condominiums and, as pleaded, allege common issues of law and fact (both amongst one another and with other and with pending litigation). As a result, the consolidation of litigation and implementation of protocols would be more efficient, expedient, and less burdensome than separate litigation of each Claim and related adversary proceeding, and will reduce the risk of irreconcilably inconsistent adjudications attendant to separate litigation.

In sum, Debtors request that the Court enter an order substantially in the form attached hereto as **Exhibit 1** (the "Case Management Order"):

(i) converting each of the Claims and the Debtors' Objections to an adversary proceeding (the "Claims Adversary");

(ii) consolidating (a) the resulting Claims Adversary; (b) the removed action (Adversary No. 15-01123-abl); (c) the action filed in the United States District Court for the District of Nevada as Case No. 2:08-cv-00773-MMD-PAL, to the extent referred to this Court pursuant to LR 1001(b)(1); and (d) the adversary proceeding commenced by the Debtors' *Complaint for Declaratory Relief* (Adversary No. 15-01174-abl); and

(iii) approving procedures for the management of discovery and pretrial matters.

Consolidation of related claims and entry of specialized case management orders are common in large and/or complex cases, as the bankruptcy courts and trial courts have broad discretion to decide how cases on their dockets are to be tried in a manner which is just, speedy, and economical.

This Motion is made and based upon the memorandum of points and authorities provided herein, the papers and pleadings on file herein, judicial notice of which is respectfully requested, and any argument of counsel entertained by the Court at the time of the hearing of the Motion.

---

[1] Debtors are continuing to analyze the impact of the *Motion to Withdraw Proofs of Claim Pursuant to Federal Rule of Bankruptcy Procedure 3006* [ECF No. 337] (the "Withdrawal Motion") filed by KJH & RDA Investor Group, LLC and others listed on the verified statement of Fennemore Craig, P.C. on these Chapter 11 Cases.

# I.
# JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This Motion and the claims and causes of action to which it relates are core proceedings as defined in 28 U.S.C. § 157(b)(2)(A), (B), (E), (H), and (O), and arise under, arise in and are related to the Debtors' Chapter 11 Cases.

2. Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

3. The statutory basis for the relief requested herein is Fed. R. Civ. P. 1, Fed. R. Civ. P. 7, made applicable by Bankruptcy Rule[2] 7007, Fed. R. Civ. 16, made applicable by Bankruptcy Rule 7016, Fed. R. Civ. P. 42, made applicable by Bankruptcy Rule 7042, Bankruptcy Rule 1001, and Section 105(a) and (d) of the Bankruptcy Code.

4. Pursuant to LR 7014.2, Debtors consent to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the United States Constitution.

# II.
# RELEVANT FACTS

**A.    The Chapter 11 Cases.**

1. On June 26, 2015 (the "Petition Date"), Debtors filed their respective voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned cases (the "Chapter 11 Cases"), which cases are jointly administered under case number 15-13706-abl. See ECF Nos. 1 and 29.

2. Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, Debtors continue to operate their businesses as debtors-in-possession. No request has been made for the appointment of a trustee or examiner in the Chapter 11 Cases.

---

[2] Unless otherwise stated, all references to a "Section" shall be to the Bankruptcy Code appearing at Title 11 of the United States Code, all references to a "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure, all references to a "Federal Rule" shall be to the Federal Rules of Civil Procedure, and all references to a "Local Rule" or "LR" shall be to the Local Rules of Bankruptcy Practice of the United States District Court for the District of Nevada.

Garman Turner Gordon
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

3.      On August 17, 2015 the United States Trustee filed its *Appointment of the Official Committee of Unsecured Creditors*. See ECF No. 114.  The Official Committee of Unsecured Creditors (the "Committee") is composed of five members, each of whom is a plaintiff in certain pre-petition litigation against the Tower A Debtor and third parties, discussed below.  Each of the members of the Committee also has sought to withdraw its Claim against the Debtors.

B.      **Background of the Debtors and The Signature Towers.**

4.      Debtors are the developers of high-rise condominium towers now called The Signature at MGM Grand ("The Signature Towers").  The three towers comprising The Signature Towers are referred to as "Tower A," "Tower B" and "Tower C," and each tower was built by one of the three Debtors.  Each Tower consists of 576 condominium units, for a total of 1,728 units in The Signature Towers (collectively, the "Units" and each, a "Unit").

5.      Debtors are each Nevada limited liability companies, created to construct The Signature Towers and sell the condominiums.  Each Debtor has two members: (1) a member affiliated with Turnberry, and (2) a member affiliated with MGM Resorts.  Each member has a 50% economic interest in the particular Debtor.  Specifically, Turnberry/Harmon Ave. LLC and MGM Grand Condominiums, LLC are the members of the Tower A Debtor; Turnberry Harmon Ave. B LLC and MGM Grand Condominiums II, LLC are the members of the Tower B Debtor; and Turnberry Harmon Ave. C. LLC and MGM Grand Condominiums III, LLC are the members of the Tower C Debtor.

6.      Between January 2004 and December 2006, when the vast majority of Units were sold, the Las Vegas real estate market was extremely active, with significant increases in real estate prices being realized on an annual (and in many cases, monthly or quarterly) basis.

7.      As a result of the market conditions, prospective buyers were very interested in owning a piece of real estate on the Las Vegas strip.  To that end, the sales of the first two Towers proceeded very quickly, with many customers lining up to provide their deposits even before the sales process had formally opened.  The purchase prices for the Units ranged from approximately $500,000 to more than $1 million depending on the size and location of the Unit.

8.      The sales of condominiums were effectuated through a Purchase and Sale Agreement ("Purchase Agreement") between Tower A Debtor and each purchaser, usually entered at a time when the Towers were being constructed.[3]  With respect to units in Tower B or Tower C, Tower A Debtor would then assign the Purchase Agreement to the respective Tower B or Tower C Debtor, and the purchaser would then close the transaction with the respective Debtor entity for the specific Tower Unit they purchased (i.e., a buyer purchasing a Unit in Tower B would purchase from the Tower B Debtor).

9.      The buyers received well-constructed condominiums in a prime location on the Las Vegas strip and could use and occupy their Units as their residence or had the option to rent out their condominiums on a long-term or short-term basis, whether through the optional rental program described below, independently, or through a third-party property manager.

10.     Owners who elected to enter into the optional rental program offered by Signature Condominiums, LLC for The Signature Towers owners (the "Signature Rental Program") could do so through a "Rental Management Agreement") with The Signature Condominiums, LLC.

11.     The Signature Rental Program was optional, and many owners chose not to participate and elected either to not rent out their properties at all or to rent them out through other means.  Participation in the Signature Rental Program was never a condition to purchasing a condominium in The Signature Towers.

12.     Shortly after most Units in The Signature Towers were sold, the "Great Recession" began pummeling the Las Vegas' economy and devastating the real estate market, especially the high-rise condominium market.  In light of the impact of the global financial crisis on property values and investors' portfolios, along with reduced room rates that impacted the rentals of their units, many of The Signature Towers purchasers experienced buyers' remorse.

---

[3] During the sale process, an affiliated entity named Turnberry West Realty, LLC was retained by the Debtors to represent them as a real estate broker in connection with the sales.  The Purchase Agreements were entered into with the Tower A Debtor regardless of the specific tower in which the purchased condominium unit would be.  The Tower A Debtor then assigned the Purchase Agreement to the specific seller entity for the respective tower prior to closing.  The purchasers and the specific, selling Debtor then closed on a transaction and the purchase price was paid to that Debtor.

13. This buyers' remorse expressed itself in a series of lawsuits (collectively, the "Prepetition Litigation") starting in August 2007, commenced only against the Tower A Debtor, seeking to shift the risk of loss to the Debtors and their affiliates. Though initially commenced by only a few buyers, other buyers saw an opportunity to recoup their losses without any concomitant risk and were added as plaintiffs in the Prepetition Litigation when counsel for the Claimants engaged in aggressive solicitation efforts and potential plaintiffs were given to understand that a class action was pending.

**C.    The Prepetition Litigation.**

14. The Chapter 11 Cases were filed in an effort to corral and expeditiously resolve the claims asserted in the Prepetition Litigation in multiple forums, which, though pending for eight years at a cost to the Debtors of $5 million in attorneys' fees and expenses, did not advance beyond the pleading stage.

15. The history of the Prepetition Litigation is detailed in Debtors' *Complaint for Declaratory Relief* in Adversary No. 15-01174-abl. However, in sum, at the time Debtors' Chapter 11 Cases were filed, two separate multi-party lawsuits and two separate "mass" arbitrations were pending. These multiple actions originated from a single action filed in August 2007, in which 46 plaintiffs made six securities and common fraud claims solely against Tower A Debtor, which eventually expanded to twenty-four claims against Tower A Debtor and ten other entities. Though pending for almost eight years at the time the Chapter 11 Cases had commenced, the Prepetition Litigation remained in the very early stages.

**III.**
**RELIEF REQUESTED**

16. The various independent actions have created a procedural quagmire akin to a rat's nest that only this Court has the jurisdiction and power to cut through by way of the liquidation of claims against the Debtors and the Debtors' claims against the Non-Debtor Defendants. The Court has a number of tools, including Federal Rules 16 and 42 and Section 105 of the Bankruptcy Code, to facilitate the fair and efficient resolution of the Claimants' claims against the Debtors and the claims against Non-Debtor Defendants which are owned by

the Debtors or for which the Debtors are liable as a result of, *inter alia*, contractual indemnification provisions.

17.     Debtors seek to streamline this resolution through conversion of the Objections to adversary proceedings subject to Part VII of the Bankruptcy Rules and consolidation of the resulting Claims Adversary with the following proceedings involving common issues of law and fact:

    a.     The Removed Adversary.  On July 31, 2015, Debtors filed their Notice of Removal pursuant to 28 U.S.C. §§ 157, 1334, and 1452(a), Rules 9011 and 9027 of the Bankruptcy Rules, and Local Rules 1001(b) and 9027.1, of the consolidated action entitled *KJH Investor Group, LLC, et al v. Turnberry/MGM Grand Towers, et al* pending in the Eighth Judicial District Court in Clark County, Nevada as Case No. A547024 (the "KJH Action"), thereby commencing Adversary No. 15-01123-abl (the "Removed Adversary").

The live pleading in the KJH Action is the Second Amended Consolidated Complaint (the "KJH Complaint") filed on October 1, 2014.  The KJH Complaint is attached as Exhibit 164 to Tower A Debtor's Notice of Removal (Case No. 15-01123-abl, ECF No. 1).  A true and correct copy of the KJH Complaint is attached hereto as **Exhibit 2**.

The KJH Complaint asserts the following twenty-four claims against the Tower A Debtor and various affiliates of the Debtors (the "Non-Debtor Defendants"),[4] though a number of the causes of action have been dismissed with prejudice, and a number have been dismissed without prejudice: (1) violation(s) of Section 10(b) of the Securities Act of 1933; (2) violation(s) of Section 12(a)(1), (2) of the Securities Act of 1933; (3) violation(s) of Rule 10b-5; (4) violation(s) of N.R.S. 90.460; (5) violation(s) of 90.570; (6) violation(s) of N.R.S. Chapter 598,

---

[4] The Non-Debtor Defendants are MGM Grand Condominiums LLC, The Signature Condominiums, LLC, MGM Resorts International, Turnberry/Harmon Ave. LLC, MGM Grand Hotel, LLC, Signature Tower I, LLC, Signature Tower 2, Signature Tower 3, LLC, and Turnberry West Realty.  References to "Defendants" shall be to the Non-Debtor Defendants and Tower A Debtor.

et. seq.; (7) fraudulent concealment; (8) fraudulent conveyance; (9) fraudulent misrepresentation; (10) negligent misrepresentation; (11) fraud in the inducement; (12) aiding and abetting; (13) civil conspiracy; (14) alter ego; (15) declaratory/injunctive relief to abate nuisance and trespass; (16) nuisance; (17) trespass; (18) declaratory/injunctive relief to declare the CC&Rs unenforceable and unconscionable; (19) breach of the implied covenant of good faith and fair dealing; (20) quiet title; (21) breach of fiduciary duty; (22) breach of contract; (23) accounting; (24) unjust enrichment. See generally, Exhibit 2.

b. The Federal Court Action. As of the commencement of these Chapter 11 Cases, an action entitled *Mary Ann Sussex, et al. v. Turnberry/MGM Grand Towers, LLC, et al.*, Case No. 2:08-cv-007730-MMD-PAL, was pending in the United States Bankruptcy Court for the District of Nevada, in which eight plaintiffs are asserting seven securities and fraud claims against Tower A Debtor and other entities. This Action was consolidated in 2013 with *Abraham, et al. v. Turnberry/MGM et al.,* Case No. 2:11-cv-01007-JCM*RJJ, filed in 2011, in which approximately 385 plaintiffs make similar securities and fraud claims against the Tower A Debtor and other entities (the *Sussex* and *Abraham* actions are collectively referred to as the "Federal Action").

As of the commencement of these Chapter 11 Cases, a consolidated arbitration was pending before arbitrator Brendan Hare with the American Arbitration Association (the "Sussex Arbitration"). The live "pleading" in the *Sussex* Arbitration is the *Fourth Amended Complaint in Arbitration Amended as Per Nevada Supreme Court Order Attached Hereto and Filed as AAA Case No.: 11 115 Y 00264 12 (Sussex et al. v. Turnberry/MGM Grand Towers, LLC et al.)* filed on July 1, 2013 (the "Sussex Complaint"). A true and correct copy of the Sussex Complaint is attached hereto as **Exhibit 3**.

The Sussex Complaint asserts twenty-four causes of action against Tower A Debtor and the Non-Debtor Defendants which are identical, to the letter, to those asserted in the KJH Complaint.

On July 31, 2015, Tower A Debtor filed its *Motion to Refer all Claims and Causes of Action to the Bankruptcy Court* (Case No. 08-00773, ECF No. 191) pursuant to the automatic referral contemplated by Local Rule 1001(b). The Federal Court has not yet entered an order referring the Federal Action to this Court, but Debtors anticipate that the "automatic" referral will be entered in the near future.

c. <u>Debtors' Complaint for Declaratory Relief</u>. On October 9, 2015, the Debtors filed their Complaint for Declaratory Relief ("<u>Debtors' Complaint</u>"), commencing Adversary No. 15-01174-abl ("<u>Debtors' Adversary</u>"). Debtors' Complaint seeks a declaratory judgment that each of the causes of action asserted by the plaintiffs in the KJH Complaint and the Sussex Complaint except for the claims for declaratory and/or injunctive relief to abate nuisance and trespass (fifteenth cause of action); nuisance (sixteenth cause of action); trespass (seventeenth cause of action); declaratory and/or injunctive relief to declare the CC&Rs unenforceable and unconscionable (eighteenth cause of action); and quiet title (twentieth cause of action) are property of the Debtors' bankruptcy estates, and declaratory judgment that the automatic stay bars the plaintiffs' prosecution of such causes of action.

18. Upon consolidation of the Claims, the Removed Adversary, the Debtors' Adversary, and the Federal Action into a single adversary proceeding (the "<u>Consolidated Adversary</u>"), the Debtors request realignment of the parties as necessary and entry of the proposed Case Management Order for the fair and efficient resolution of the merits of the parties' dispute.

# IV.
# LEGAL ARGUMENT

**A.     The Court May Convert Claims and Objections to Adversary Proceedings.**

As a threshold matter, it is common for a bankruptcy court to convert an objection to a claim from a contested matter into an adversary proceeding when it encompasses multiple claims and complex factual circumstances. See, e.g., In re Ezenia! Inc., 536 B.R. 485, 489 (Bankr. D.N.H. 2015); In re Diggs, No. 08-10020, 2008 WL 5096008, at *1 (Bankr. E.D. La. Sept. 18, 2008) (objection to proof of claim converted to adversary proceeding); In re Heritage Org., L.L.C., No. 04-35574-BJH-11, 2006 WL 6508477, at *3 (Bankr. N.D. Tex. Jan. 27, 2006) aff'd sub nom. Wilferth v. Faulkner, No. 3:06 CV 510 K, 2006 WL 2913456 (N.D. Tex. Oct. 11, 2006) (noting that debtor's claim objection and creditor's response thereto had been converted into an adversary proceeding).

Debtors' anticipate filing more than 500 objections to the Claimants' Claims in these Chapter 11 Cases, and expect to receive an equal number of responses. Each of the Claims facially appear to be based upon the allegations asserted in the Prepetition Litigation. Absent conversion of the Claims and Objections into a consolidated adversary proceeding, the sheer volume of pleadings and discovery involved in the litigation of over 500 separate contested matters will be duplicative, unwieldy, and unnecessarily expensive and burdensome.

**B.     The Court May Consolidate Actions With Common Alleged Issues.**

Debtors further request that the resulting adversary proceeding be consolidated with the Removed Adversary, the Debtors' Adversary, and, upon its referral pursuant to Local Rule 1001(b),[5] the Federal Action, pursuant to Federal Rule 42(a), which allows a trial court to consolidate actions involving a common question of law or fact. See In re de la Salle, 461 B.R. 593, 603 (B.A.P. 9th Cir. 2011). Specifically, Federal Rule 42(a) provides:

> **Consolidation.** If actions before the court involve a common question of law or fact, the court may:
>
> (1) join for hearing or trial any or all matters at issue in the actions;

---
[5] Local Rule 1001(b)(1) provides that "All cases and proceedings within the bankruptcy jurisdiction of the Courts are referred to the bankruptcy judges."

Garman Turner Gordon
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

        (2) consolidate the actions; or

        (3) issue any other orders to avoid unnecessary cost or delay.

Fed. R. Civ. P. 42(a).

        Consolidation "is designed to promote not only judicial economy . . . but also the expeditious and efficient conduct of litigation for all concerned." In re de la Salle, 461 B.R. at 603 (citing Johnson v. Manhattan Ry. Co., 289 U.S. 479, 496–97, 53 S.Ct. 721, 77 L.Ed. 1331 (1933)); Ortiz v. Sullivan, No. CIV. 07-0494 WQHPCL, 2007 WL 2318953, at *1 (S.D. Cal. Aug. 13, 2007) (court has "broad discretion to decide how cases on its docket are to be tried so that the business of the court may be dispatched with expedition and economy while providing justice to the parties.") (citing Huene v. United States, 743 F.2d 703, 704 (9th Cir.1984) (citing 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2381 (2d ed. & Supp.2000))).

        Further, whether to consolidate actions is "within the broad discretion of the bankruptcy court and trial courts may consolidate cases sua sponte." Id. (quoting Burchinal v. Cent. Wash. Bank (In re Adams Apple Inc.), 829 F.2d 1484, 1487 (9th Cir.1987)); see also U.S. Bank Nat. Ass'n v. Ribeiro, No. 2:11-CV-01534-JCM, 2012 WL 40459, at *3 (D. Nev. Jan. 9, 2012) ("Fed.R.Civ.P. 42(a) gives the trial court broad discretion to consolidate actions before the court which involve common questions of law or fact.") (citing 9A Wright and Miller, Federal Practice and Procedure, § 2381, 3d Ed.); In re Hearthside Baking Co., Inc., 391 B.R. 807, 819-20 (Bankr. N.D. Ill. 2008) (citing United States v. Knauer, 149 F.2d 519, 520 (7th Cir.1945), aff'd 328 U.S. 654, 66 S.Ct. 1304, 90 L.Ed. 1500 (1946)).

        In deciding whether to consolidate, a court generally considers the following two factors: (i) whether common questions of law and fact exist which warrant consolidation, and (ii) whether the interest of judicial convenience outweighs any potential for delay, confusion and prejudice that may result from such consolidation. Ortiz, 2007 WL 2318953, at *1 (citing Bank of Montreal v. Eagle Associates, 117 F.R.D. 530, 532 (S.D.N.Y. 1987)).

1. **Common Issues.**

Claimants' Claims, as pleaded in cookie cutter style, raise a number of alleged common questions of fact and law. Hundreds of these Claims are based on common allegations that are alleged on a collective basis in the Removed Adversary and Federal Action, such that if the alleged common issues are found to exist, resolution of one or more claims in one action may have preclusive effect in another. The same set of alleged operative facts forms the basis of the Removed Adversary and the Federal Action, on which the Claims are based. In sum, the vast majority, if not all, of the Claims allege (on a collective basis) that agents of the Debtors made representations to the Claimants about "the true economic value" of the Unit(s) purchased, the income to be derived from the rental of the Units, or the mechanics of the Signature Rental Program (how revenue would be split between the condominium owner and the operator of the rental program), and that these representations turned out to be false when rental of the Unit(s) did not earn the income allegedly promised. Further, Claimants contend that representations allegedly made about the condominiums being in a "serene environment" (on the Las Vegas strip) were also false.

Though each Claimant will have to prove individualized facts on a case-by-case basis with respect to their fraud-based claims, such as the misrepresentations allegedly made, that the Claimant actually relied on those alleged misrepresentations, and that any such reliance was reasonable, the Claims follow a nearly-identical pattern, and will require similar proof from the Debtors and the Non-Debtor Defendants, such as the terms of the Purchase Agreements and other documentation given to buyers and the state of the marketplace at the time of the sales.

Finally, the majority of the causes of action asserted by the Claimants in the Removed Adversary and the Federal Court Action, which form of the basis of the Claims, are inextricably intertwined with Debtors' Adversary. The Debtors' ownership of the causes of action asserted by the Claimants against the Non-Debtor Defendants must be determined prior to or concurrently with the merits of such claims, as the Claimants cannot be granted judgment or awarded damages for claims they do not own. Common issues therefore warrant consolidation.

2. **Consolidation Will Avoid Delay, Confusion, and Prejudice.**

Consolidation will expedite liquidation of the Claims rather than delay it, by identifying whether alleged common issues exist, by identifying whether common defenses exist, and by eliminating the need for inefficient and duplicative discovery and pretrial matters and the need for separate trials for each Claimant on common legal issues. Confusion of the issues and prejudice will be avoided, as the Claims will be tried before this Court rather than in multiple forums with the attendant risk of inconsistent adjudications.

Finally, as set forth in the *Manual for Complex Litigation (Fourth)*, the Court can ameliorate any concern that a single consolidated trial may result in confusion or prejudice by holding a single trial on established common issues while conducting separate trials of issues that can be segregated, or categorizing Claimants according to similar facts and conducting a series of smaller trials.[6]

## C. The Federal Rules Support Implementation of Procedures for the Just, Speedy, and Inexpensive Resolution of Disputes.

In order to facilitate the just, speedy, and least expensive resolution of the Claims, Debtors propose adoption of the Case Management Order attached hereto as Exhibit 1. The Court has ample authority to structure a case management order that is tailored to the needs of the case before it. In the Ninth Circuit, "[t]he district court is given broad discretion in supervising the pretrial phase of litigation." Risinger v. SOC, LLC, 306 F.R.D. 655, 662 (D. Nev. 2015) (citing Continental Lab. v. Medax Intern., Inc., 195 F.R.D. 675, 677 (S.D.Cal.2000) (quoting Miller v. Safeco Title Ins. Co., 758 F.2d 364, 369 (9th Cir.1985))).

Federal Rule 16, made applicable by Bankruptcy Rule 7016

> authorizes a court to manage cases so that disposition is expedited, wasteful pretrial activities are discouraged, the quality of the trial is improved, and settlement is facilitated. ***It recognizes 'the need for adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems.'***

---

[6] The *Manual for Complex Litigation (Fourth)* discusses the procedure often employed whereby discovery and motion practice is coordinated while deferring the decision on whether to aggregate some or all of the cases for trial until the claims, issues, and defenses are narrowed. See MCL § 22.32.

> The goal is to get cases decided on the merits of issues that are truly meritorious and in dispute.

In re Phenylpropanolamine (PPA) Products Liab. Litig., 460 F.3d 1217, 1227 (9th Cir. 2006) (emphasis added) (quoting Fed. R. Civ. P. 16(c)(12)).  The objectives of Federal Rule 16(b) include:

> (1) expediting the disposition of the action;
>
> (2) establishing early and continuing control so that the case will not be protracted because [of] lack of management;
>
> (3) discouraging wasteful pretrial activity;
>
> (4) improving the quality of the trial through more thorough preparation; and,
>
> (5) facilitating the settlement of the case.

Batiz v. Robinson, No. 2:05-CV-00294-PAL, 2006 WL 6853588, at *9 (D. Nev. Apr. 4, 2006) (citing Fed.R.Civ.P. 16(b)).  To accomplish these goals, courts are given wide latitude.  See Fed. R. Civ. P. 16, Advisory Committee Notes on subdivision (c), 1983 amendment (Rule 16 contains explicit authorization for special pretrial procedures and encourages their use, but stating that "[n]o particular techniques have been described; the Committee felt that flexibility and experience are the keys to efficient management of complex cases" and referring courts to the guidance in such documents as the *Manual for Complex Litigation*); Davis v. Duplantis, 448 F.2d 918, 921 (5th Cir. 1971) (stating that Rule 16 "can achieve its purpose of improving the quality of justice only if the pretrial requirements entered at the discretion of the trial court are applied with intelligent flexibility, taking into full consideration the exigencies of each situation.  The trial judge must be permitted wide latitude in guiding a case through its preparatory stages.").

The call for "intelligent flexibility" under Federal Rule 16 is consistent with Federal Rule 1 and Bankruptcy Rule 1001, which set forth the guiding principle that the rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."  See Fed. R. Civ. P. 1; Fed. R. Bankr. P. 1001; Unwired Planet, LLC v.

Garman Turner Gordon
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

Square, Inc., No. 3:13-CV-00579-RCJ, 2014 WL 1159833, at *2 (D. Nev. Mar. 17, 2014). The "just, speedy, and inexpensive determination" of the Claimants' causes of action is not going to happen in four other forums where litigation has not progressed past the pleading stage after eight years.

Moreover, the flexibility afforded under Rule 16 is consistent with the express language of Section 105(d), which grants authority for the Court to "issue an order . . . prescribing such limitations and conditions and the court deems appropriate to ensure that the case is handled expeditiously and economically." 11 U.S.C. § 105(d)(2); see also Matter of Munford, Inc., 97 F.3d 449, 455 (11th Cir. 1996) (finding "ample authority" provided by Section 105(a) and Rule 16, taken together, for entry of a bar order); In re Sosa, 443 B.R. 263, 267 (Bankr. D.R.I. 2011) (finding "ample authority and precedent" under both Bankruptcy Rule 7016 and Section 105(d) for referral of case to loss mitigation program); In re DSC, Ltd., 325 B.R. 741, 744, n.6 (Bankr. E.D. Mich. 2005) aff'd sub nom. In re DSC Ltd., No. 05-72779, 2006 WL 800709 (E.D. Mich. Mar. 28, 2006) aff'd sub nom. In re DSC, Ltd., 486 F.3d 940 (6th Cir. 2007) (authority to set earlier pretrial deadlines is within the court's normal case management authority under Rule 16 and Section 105(a) and (d)); In re Watson, No. 03-13355, 2004 WL 3244422, at *1 (Bankr. M.D. La. Sept. 29, 2004) (Bankruptcy Rule 7016(b) must be read in conjunction with applicable provisions of the Bankruptcy Code, specifically Section 105(d)).

Allowing litigation in multiple forums to continue for an unknown number of years will not ensure that the Debtors' Chapter 11 Cases are handled expeditiously and economically. Ensuring that the Debtors' Chapter 11 Cases are handled expeditiously and economically requires implementation of case management procedures that will allow the Claims and related litigation to be resolved in a fair, timely, and organized manner. Implementation of the proposed Case Management Order will achieve the objectives of Federal Rule 16, Federal Rule 1 and Bankruptcy Rule 1001, and Section 105 of the Bankruptcy Code.

**D.    The Proposed Case Management Order.**

The Case Management Order provides for the consolidation of the Claims with the Removed Adversary, the Debtors' Adversary, and the Federal Action. It is contemplated that the Court will open a new adversary proceeding for this purpose.

Further, in order to reduce confusion, the Case Management Order provides for the alignment or realignment of the parties such that the Claimants are plaintiffs and Debtors are defendants, consistent with the parties' respective burdens. As a general rule, trial courts enjoy the discretion to realign parties as necessary, according to their actual interests in the litigation. Allegro Ventures, Inc. v. Almquist, No. 11-CV-2009-L WVG, 2013 WL 3864329, at *2 (S.D. Cal. July 24, 2013) (burdens of proof supported realignment); Plumtree Software, Inc. v. Datamize, LLC, No. C 02-5693 VRW, 2003 WL 25841157, at *3 (N.D. Cal. Oct. 6, 2003) (concluding that the court had discretion to realign the parties according to the primary purpose of the litigation, including the parties' respective burdens); In re Imel, 169 B.R. 37, 38 (Bankr. W.D. Tex. 1994) (citations omitted); see also In re Exxon Valdez, 239 F.3d 985, 987 (9th Cir. 2001) ("it is the court's responsibility to align the parties according to their interests in the litigation.") (citing Dolch v. United California Bank, 702 F.2d 178, 181 (9th Cir.1983)).

As a result of aligning the parties in this manner, the Claimants' Claims will be complaints filed pursuant to Fed. R. Civ. P. 7(a)(1) and Debtors' Objections will be answers filed pursuant to Fed. R. Civ. P. 7(a)(2). The Case Management Order provides for the Claimants to file replies to the Objections, which will be deemed replies to answers pursuant to Fed. R. Civ. P. 7(a)(7). Debtors' Complaint for Declaratory Relief will be deemed a counterclaim, and the Case Management Order provides for the Claimants to file a joint answer to the counterclaim.

The Case Management Order also provides for quickly disclosing and exchanging documents and information pursuant to Federal Rule 26(a)(1)(A) (made applicable by Bankruptcy Rule 7026) that are most relevant to the Claims or which, due to the Prepetition Litigation, the parties should be able to quickly produce, while allowing the parties to commence discovery shortly thereafter. The Case Management Order modifies the number of interrogatories that may be propounded and increases the number of depositions permissible due

to the vast number of Claimants, while contemplating consolidated discovery on the "common issues." The discovery procedures set forth in the Case Management Order are intended to both expedite and simplify the discovery process, while avoiding the gamesmanship which so often occurs during discovery. These protocols will not have the effect of delaying discovery because Debtors are not proposing that any phase of discovery be delayed until the other is completed, nor are the Debtors proposing duplicative discovery. Rather, the protocols account for the fact that discovery pertaining to alleged common issues is more easily and quickly accomplished than discovery pertaining to the individual issues.

The Case Management Order is designed to provide the Court and parties with flexibility by setting forth procedures for its modification and a simplified procedure for resolution of any discovery disputes as between the parties. Moreover, the Case Management Order does not set forth procedures for trial; instead, it is contemplated that the Court will address trial scheduling at the pretrial conference.

## V.
## CONCLUSION

These proposed protocols provide for the just, speedy, and economical liquidation of the Claimants' Claims and resolution of related disputes in a single forum and in a single action. They do not deny Claimants or the Debtors from obtaining any discovery that would otherwise be permissible under Rule 26, subject, of course, to the proportionality principle encompassed in Rule 26(b)(2)(C), but structure discovery and pretrial matters in the Consolidated Adversary for the most fair and efficient resolution of the merits of parties' disputes and in a manner that will not burden this Court's docket with hundreds of duplicative contested matters with nearly-identical motions and discovery.

. . .

. . .

. . .

. . .

. . .

Therefore, Debtors request that the Court enter an order substantially in the form attached hereto as Exhibit 1, converting the Claimants' Claims to an adversary proceeding, consolidating the Claims and the Debtors' Objections thereto, the Removed Adversary, the Debtors' Adversary, and ultimately, the Federal Action, into a single adversary proceeding, and providing for the management of discovery and pretrial matters.

DATED this 16th day of November, 2015.

> GARMAN TURNER GORDON
>
> By: /s/ Gabrielle A. Hamm
> GREGORY E. GARMAN, ESQ.
> TALITHA GRAY KOZLOWSKI, ESQ.
> GABRIELLE A. HAMM, ESQ.
> *Attorneys for Debtors*